Lanny ROGERS and Carolyn Rogers, et al., Appellants (Plaintiffs Below),

v.

The MUNICIPAL CITY OF ELKHART, Indiana, Appellee (Defendant Below).

No. 20S03–9605–CV–317.

Supreme Court of Indiana.

Nov. 26, 1997.

John C. Hamilton, Don G. Blackmond, South Bend, for Appellants.

Paul D. Eash, Elkhart, for Appellee.

SHEPARD, Chief Justice.

The Court of Appeals held in this case that only land which has been subjected to the regulatory process for platting and recording can be considered "subdivided" territory eligible for annexation by a contiguous municipality. We conclude that this holding exceeds the standard set by law.

### Case History

The City of Elkhart enacted an ordinance to annex 439 acres of Cleveland Township, Elkhart County, under the authority granted by Indiana Code § 36-4-3-13. Several residents of the annexed territory remonstrated, and the Elkhart Superior Court heard evidence on the remonstrance over several months. Ultimately, the court upheld the annexation on multiple, alternative grounds. It held that the land being annexed was (1) needed for the city's development, (2) already 60% subdivided, *and* (3) zoned for business, commercial, or industrial uses.

Remonstrators' arguments on appeal may be characterized as raising three legal issues:

I. Whether the trial court could properly approve the ordinance on the first of the grounds above when the City expressly waived relying upon it;

II. Whether the trial court employed an improper reading of the "subdivided" requirement of our code;

III. Whether the trial court erred by finding that all but a *de minimis* amount of the land was zoned for business and industry.

### Annexation Procedure and the Standard of Review

The framework of Indiana's annexation laws has long featured three basic stages: (1) legislative adoption of an ordinance annexing certain territory and pledging to deliver certain services within a fixed period; (2) an opportunity for remonstrance by affected landowners, and (3) judicial review.

Although the applicable statutes have undergone many changes over the years, certain general propositions of law have long applied. The statutes invest exclusive authority to annex territory in the governing body of a municipality. *City of Aurora v. Bryant*, 240 Ind. 492, 165 N.E.2d 141 (1960). Annexation is a legislative function and becomes a question subject to judicial cognizance only upon review as provided by statute. *City of Indianapolis v. Wynn*, 239 Ind. 567, 157 N.E.2d 828 (1959). Indeed, to the extent annexation statutes have seemed to require courts to make determinations of a non-judicial nature, courts have refused, finding themselves to be without the power to do so under the separation of powers clause of the Indiana Constitution, Art. 3 § 1. *See, e.g., In re City of Mishawaka*, 259 Ind. 530, 289 N.E.2d 510 (1972). A court is not authorized to act unless a remonstrance is filed; if a remonstrance is not filed, the annexation becomes effective. *Wynn*, 239 Ind. 567, 157 N.E.2d 828. The effect of filing a remonstrance is to abate the culmination of the annexation pending review in the courts, where the burden is on the municipality to sustain the annexation by showing that it has complied with the requirements of the statute. *Id.*

Because the city's authority to annex territory is defined by statute, the court's duty is to determine whether the city has exceeded its authority and met the conditions

imposed by the statute. *King v. City of Bloomington,* 239 Ind. 548, 159 N.E.2d 563 (1959); *Bryant,* 165 N.E.2d at 147. *City of Hobart v. Chidester,* 596 N.E.2d 1374 (Ind. 1992). Even though the burden of pleading is on the remonstrator, the burden of proof is on the municipality to demonstrate compliance with the statute. The court sits without a jury and enters judgment on the question of annexation after receiving evidence and hearing argument from both parties. Ind. Code Ann. § 36-4-3-12 (West 1997).

■■■ Once the trial court has decided whether to approve an annexation ordinance, either the municipality or the remonstrators may appeal. Where, as here, special findings are volunteered by the trial court, we apply the standard of review set out in Trial Rule 52. *Chidester v. City of Hobart,* 631 N.E.2d 908 (Ind.1994). Issues of fact are reviewed for sufficiency of the evidence, and the appellate court looks to the record only for evidence favorable to the judgment. *Id.* at 910. Questions of law, of course, are purely the stuff of appellate work, and we review them *de novo. MacLeod v. Hunter,* 671 N.E.2d 177, 178 (Ind.Ct.App.1996).

While annexation appeals commonly revolve around disputes over the provision of services, the adequacy of the City's fiscal plan is not at issue in this case. Instead, the dispute focuses on rather more technical matters relating to whether the land in question is adequately urban to meet the code requirements for annexation. The "urban character" provisions of our present law permit annexation if the land is contiguous to the municipality and if one of the following is true:

(A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre;

(B) Sixty percent (60%) of the territory is subdivided;

(C) The territory is zoned for commercial, business, or industrial uses.

Ind.Code Ann. § 36-4-3-13(b) (West Supp. 1997). Relatively rural territory may also be annexed without meeting any of these three standards if it is "needed and can be used by the municipality for its development in the reasonably near future." Ind.Code Ann. § 36-4-3-13(c)(2) (West Supp.1997).

## I. Land "Needed for Future Development"

Remonstrators challenge the trial court's decision that the municipality satisfied alternative subsection 36-4-3-13(c)(2), the "needed for future development" provision.[1] Remonstrators claim the City expressly waived reliance on this provision.

The record reveals that the City did waive reliance on this provision. To his credit, counsel for the City does not contest the Remonstrators' claim on appeal. Without pausing to determine whether the trial court might be sustained on these grounds if the City asserted otherwise, we pass on to the two issues the parties now contest.

## II. Land "Sixty Percent Subdivided"

■■■ Another of the four alternative grounds for approval is that "[s]ixty percent (60%) of the territory is subdivided." Ind. Code Ann. § 36-4-3-13(b)(2)(B) (West Supp. 1997). The annexation statute does not contain a definition of "subdivided."

The Remonstrators initially asserted that in deciding whether land is "subdivided" for annexation purposes, the courts should apply the definition of "subdivision" the legislature wrote for application in the article governing operation of plan commissions, redevelopment authorities, economic development districts, and the like.[2] That article defines "subdivision" as: "The division of a parcel of land into lots, parcels, tracts, units, or interests in the manner defined and prescribed by a subdivision control ordinance adopted by the legislative body under I.C. 36-7-4." Ind. Code Ann. § 36-7-1-19 (West 1997).

---

**1.** Subsection 36-4-3-13(c) has its roots in the 1852 statute for incorporation of cities. The statute allowed annexation over the objection of a landowner of unplatted, contiguous territory once public notice was given and a hearing held by the county board of commissioners, who decided whether to approve the annexation. 1852

Ind.Rev.Stat., ch. 17 § 82-83, at 221 (June 18, 1852).

**2.** Section 36-7-1-1 *et seq.*; Appellant's Brief, 22-24.

The legislative body for Elkhart County has adopted such an ordinance. It is a relatively modern ordinance, applying to land subdivided after September 1, 1982. The Elkhart County Subdivision Control Ordinance defines "subdivision" in this way:

> n. SUBDIVISION. A division or redivision of land in which two (2) or more parcels, lots or sites are established for residential or business purposes and any one (1) of these parcels, lots or sites are less than three (3) acres in area, which may include a public way through the tract of land. A division or redivision of land is not a subdivision if:
>
> 1. the sale or exchange of parcels of land to or between adjoining property owners where those sales or exchanges does not create additional building lots, or
>
> 2. A Court orders the division of land, or
>
> 3. A parent transfers adjacent land to a child.

(R. at 562) (quoting *Elkhart County, Ind., Code* § 36-7-4-700, County Subdivision Control Ordinance art. 2 § n, at Z-90 (1993)). This definition is geared to the creation of new development lots [3] and must be read in parallel with the definitions of "industrial subdivision." [4]

The City maintains that the evidence shows that the territory is seventy-eight percent (78%) subdivided in accordance with the definition of "subdivision" contained in the Elkhart County Subdivision Control Ordinance. In their reply brief, counsel for the Remonstrators make it clear that they believe meeting this definition requires more than land subdivided in a way consistent with this definition. They assert that the City must demonstrate that 60% of the land became subdivided through the local subdivision approval process.

This assertion asks courts to add too much to statutes that consign decision-making power to legislators, local and state. The theme of Indiana annexation law has long been that adjoining territory of an urbanizing character was subject to annexation. As counsel for the Remonstrators observe, "Generally speaking, land next to a city has already begun taking on attributes of urbanization or it reflects the immediate likelihood of such urbanization." Appellant's Brief, p. 19. The earliest statutes permitted virtually automatic annexation of adjacent platted land.[5] In this century, the law permitted annexation of subdivided land "whether platted or not." Act of March 6, 1905, ch. 129 § 242, 1905 Ind. Acts. By 1935, the reference to platting was removed altogether. Act of March 7, 1935, ch. 153 § 1, 1935 Ind. Acts (amending Act of March 6, 1905). In 1955, the legislature chose to use the phrase "The area is urban in character, being an economic and social part of the annexing city." Act of March 11, 1955, ch. 269 § 1 and 3, 1955 Ind. Acts (amending Act of March 7, 1935). The current method of proving urban character were adopted in 1969:(1) 60% subdivided, (2) 3 persons per acre, or (3) zoned for commercial, business, or industrial uses. City and Town Act of 1969, ch. 239 § 407, Ind. Acts 1969 (now codified as amended at Ind.Code Ann. § 36-4-3-13(b) (West Supp.1997)).

▮ Inasmuch as the present statute contains no definition of "subdivided," the trial

---

**3.** "LOT. A designated portion of a subdivision intended for transfer of ownership or for building development." (R. at 560) (quoting *Elkhart County, Ind., Code* § 36-7-4-700, County Subdivision Control Ordinance art. 2 § e, at Z-87 (1993).

**4.** "A subdivision of property for industrial or business uses permitted when located on land which is zoned M-1, M-2, or M-3." (R. at 562) (quoting *Elkhart County, Ind., Code* § 36-7-4-700, County Subdivision Control Ordinance art. 2 § c, at Z-87 (1993)). For purposes of primary approval, industrial subdivisions are exempt from the County Zoning Ordinance requirements for lot width, area, and configuration, (R. at 566) (quoting *Elkhart County, Ind., Code* at art. 7

§ 1(a), at Z-100.), and thus from the application requirement of describing in the site plan the layout, number, and dimension of lots and zoning setback lines. (R. at 563) (quoting *Elkhart County, Ind., Code* at art. 4 § 1(g), at Z-93).

**5.** The earliest annexation statute was adopted in 1824. An act for the incorporation of Towns, 1824 Ind.Rev.Stat., ch. CXI § 14, at 417 (January 30, 1824). It provided practically automatic annexation of improved land whenever any adjacent out-lot was platted into new building lots and then recorded. The acts of building and recording building lots were viewed as constructive consent to annexation. *See Forsyth v. City of Hammond,* 142 Ind. 505, 40 N.E. 267 (1895).

court might well have looked in several directions if it perceived the need for greater definition. The definition of a "subdivision" found in that part of the code applicable to planning and redevelopment is a plausible place to look, though that article in the code addresses rather different activities than the annexation article. We conclude that the definition a municipality uses for these purposes is one yardstick a court may employ, although there may be others not suggested to us by the parties to this case.

It is apparent that the 439 acres at issue meet the definition of "subdivided" under Elkhart's 1982 ordinance. Remonstrators' assertion that the City must prove that all the land was subdivided pursuant to Elkhart's 1982 subdivision approval ordinance, however, demands far more than the straightforward language of the code provides. The evidence showed, for example, that many of the subdividings occurred before Elkhart's 1982 ordinance was enacted, indeed, before current Title 36 itself became a part of the Indiana Code.

The larger object of the annexation statute is, as it has always been, to permit annexation of adjacent urban territory. The trial court's use of Elkhart's ordinance for subdivisions was consistent with this statutory purpose and the language of the code itself. The trial court's finding that the land was "subdivided" was sufficient based on the record.

### III. "Zoned for Commercial, Business, or Industrial Uses"

 The trial court also upheld the annexation on grounds the territory is zoned for commercial, business, or industrial use as permitted by Ind.Code Ann. § 36–4–3–13(b)(2)(C) (West Supp.1997). Remonstrators argue that a territory must be 100% zoned for the enumerated uses to be eligible under this provision. The trial court disagreed, concluding that a *de minimis* exception for other zoning uses exists within the statute. The court noted that 6.6 percent of the territory was zoned for residential use and concluded that this is *de minimis*.

The Court of Appeals agreed that a *de minimis* analysis is appropriate, but held that 6.6 percent is too substantial to be called *de minimis*.

 We agree with both courts that a *de minimis* rule may be applied to section 36–4–3–13(b)(2)(C). The trial court's description of the annexed territory suggests why a practical approach is appropriate:

The immediate issue is whether or not any residential zone, however small, and whether or not, as here, an enclave, or enclaves, within commercial, business or industrial zones precludes annexation of the whole territory. The answer by this court is that an area overwhelmingly zoned for industrial, commercial, and business uses should be considered as meeting the statutory requirements for annexation even if a small shard, island, or enclave of land is zoned residential.

. . . .

. . . The territory is urban in character but only a small portion is either zoned for or used for residential purposes. The whole territory contains about 29 dwellings and 59 businesses, commercial, and industrial establishments of all sizes, with about 100 buildings for those establishments. These non-residential buildings are scattered through the whole territory, even on the three streets having all but two of the houses, and are even scattered among houses on the streets which have houses. No street is purely residential.

(R. at 63–65.)

It is apparent from the record that the 6.6% of the land zoned residential consists of a regular, full-fledged residential subdivision that would itself likely qualify under the "subdivided" provision in the code. While a court might view cautiously any attempt to annex under a single ordinance territories that might not meet the statutory criteria standing alone, here, the trial court seems to have been justified in finding that 93.4% was sufficient to meet the business zoning test.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.