ATTORNEYS FOR APPELLANT
Nicholas K. Kile
Barnes & Thornburg LLP
Indianapolis, Indiana

Douglas C. Haney
City of Carmel Department of Law
Carmel, Indiana

ATTORNEY FOR APPELLEES
Brian J. Zaiger
Noblesville, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 29S02-0604-CV-139

CITY OF CARMEL, INDIANA,

*Appellant (Defendant below),*

v.

CARL MICHAEL STEELE AND
VICTORIA A. RUSSO-STEELE,

*Appellees (Complainants below).*

_____

Appeal from the Hamilton Superior Court, No. 29D01-0410-PL-918
The Honorable Steven R. Nation, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 29A02-0503-CV-245

_____

**May 2, 2007**

**Rucker, Justice.**

When a municipality proceeds to annex territory as a result of a petition requesting it to do so, the legal description of the territory as set forth in the annexation ordinance determines whether the territory is contiguous to a municipality's corporate boundaries. Here, the trial court looked beyond the ordinance to the legal description in the petition that inspired the ordinance. We conclude that to do so in this case was beyond the scope of trial court review.

## Facts and Procedural History

This case concerns the City of Carmel's efforts at a voluntary annexation of certain territory. The essential facts are these. A Delaware limited liability company known as Landmark on Spring Mill, LLC is the owner of a forty-three-acre tract of land located in Hamilton County, referred to as the AMLI property. Containing an apartment complex, the land is square in shape, bordered on the west by Spring Mill Road and on the south by 146th Street. On August 11, 2004, Landmark filed a petition requesting the City of Carmel to annex AMLI. On September 24, 2004, after a third and final reading, Carmel's common council adopted Ordinance C-265 annexing the property. Among other things the ordinance provided, "To the extent the Annexation Territory includes land contiguous to Spring Mill Road or 146th Street, the Annexation Territory shall include these public highways and their rights-of-way." Appellant's Amended Appendix (hereafter "App.") at 41.

Carl Steele and Victoria Russo-Steele own real estate within one-half mile of the AMLI property. On October 22, 2004 the Steeles filed an appeal in the Hamilton Superior Court challenging Carmel's adoption of Ordinance C-265. The Steeles argued that the ordinance was adopted at the request of a single landowner, that the annexed territory was not contiguous to the City of Carmel, and that Carmel was prohibited from annexing property across or through the 146th Street right-of-way due to an Interlocal Agreement between the City of Carmel, the Town of Westfield, and Hamilton County.

A hearing was conducted on the Steeles' complaint. At the conclusion of which the trial court entered an order declaring among other things that Ordinance C-265 did not annex 146th Street and that the AMLI property Carmel sought to annex was not contiguous with the city's

2

existing boundaries. Accordingly the trial court rendered the ordinance invalid and decreed that the annexation would not take place.

Carmel filed a motion to correct error arguing the trial court was wrong in concluding that Ordinance C-265 did not annex 146th Street. Agreeing that its order needed to be corrected or clarified, the trial court entered a second order concluding in pertinent part, "even though C-265 by its language incorporates the 146th Street right-of-way in the annexation of the proposed annexed territory, the proposed annexed territory was never contiguous with Carmel's existing boundaries to begin with prior to the Ordinance because such territory was separated from Carmel's boundaries by the southern 146th Street right-of-way." App. at 17-18. Carmel appealed, and the Court of Appeals affirmed. See City of Carmel v. Steele, 836 N.E.2d 967 (Ind. Ct. App. 2005). Having previously granted transfer, we now reverse the trial court's judgment.

## Annexation Procedure and the Standard of Review

The framework of Indiana's annexation laws has long featured three basic stages: (1) legislative adoption of an ordinance annexing certain territory and pledging to deliver certain services within a fixed period of time; (2) an opportunity for remonstrance by affected landowners; and (3) judicial review. Rogers v. Mun. City of Elkhart, 688 N.E.2d 1238, 1239 (Ind. 1997). Although the applicable statutes have undergone many changes over the years,[1] certain general propositions of law have long applied. For example, the statutes invest exclusive authority to annex territory in the governing body of a municipality, id. (citing City of Aurora v. Bryant, 240 Ind. 492, 165 N.E.2d 141 (1960)), and as a legislative function annexation becomes a question subject to judicial cognizance only upon review as provided by statute. Rogers, 688 N.E.2d at 1239 (citing City of Indianapolis v. Wynn, 239 Ind. 567, 157 N.E.2d 828 (1959)).

Because a municipality's authority to annex territory is defined by statute, the court's duty is to determine whether the city has exceeded its authority and met the conditions imposed

---

[1] Indiana's statutory annexation scheme dates to 1824, and for much of the State's history aggrieved property owners had virtually no recourse to contest annexation. Bradley v. City of New Castle, 764 N.E.2d 212, 215 n.2 (Ind. 2002). In 1999 and 2001, the Legislature extensively revised the annexation statutes. See generally Pub. L. No. 224-2001 (2001); Pub. L. No. 217-1999 (1999).

3

by the statute. Rogers, 688 N.E.2d at 1239-40. Although the burden of pleading is on the landowner, the burden of proof is on the municipality to demonstrate compliance with the statute. The court sits without a jury and enters judgment on the question of annexation after receiving evidence and hearing argument from both parties. Ind. Code § 36-4-3-15.5(c).

Once the trial court has decided whether to approve an annexation ordinance, either the municipality or the landowner may seek appellate review. Where, as here, the trial court upon its own motion enters special findings, we apply the standard of review set forth in Indiana Trial Rule 52. Chidester v. City of Hobart, 631 N.E.2d 908, 909 (Ind. 1994). We review issues of fact for sufficiency of the evidence and look to the record only for inferences favorable to the judgment. Id. at 910. We will not set aside findings and judgments unless they are clearly erroneous. And we review questions of law *de novo*. Rogers, 688 N.E.2d at 1240.

## Discussion

### I.

At the heart of the dispute in this case is a one-half strip of public road known as 146th Street. There is no question that the southern border of the AMLI property extends only to the middle of 146th Street. See W. Union Tele. Co. v. Krueger, 36 Ind. App. 348, 74 N.E. 25, 26 (1905) (declaring that the conveyance of property bounded by a public highway conveys to the grantee title to the center of the highway). And there is no question that before the adoption of Ordinance C-265 the northern border of Carmel's municipal boundaries abutted but did not include 146th Street.[2] Rather, at issue here is the significance of Ordinance C-265 with its inclusion of this public roadway as a part of Carmel's boundaries.

---

[2] The record shows that on February 4, 2003, the Carmel City Council adopted Ordinance C-210 annexing certain portions of Clay Township. App. at 47. The legal description of the annexation territory was ambiguous. In one paragraph the ordinance appeared to include 146th Street as a part of the annexed territory. In another paragraph the ordinance appeared to exclude 146th Street. It was partly on the basis of Ordinance C-210 that Carmel argued before the trial court that 146th Street was within its municipal boundaries at the time of Landmark's petition. Employing tenets of statutory construction the trial court disagreed and determined Ordinance C-210 did not annex 146th Street. The Court of Appeals agreed. In its Petition to Transfer Carmel does not challenge the trial court's or the Court of Appeals' conclusion concerning this ordinance. We therefore affirm that portion of the Court of Appeals' opinion.

Agreeing with the trial court, the Court of Appeals determined that it is was not relevant that Ordinance C-265 made the AMLI property contiguous with Carmel by annexing 146th Street. According to the Court, "Carmel's burden was to show that *at the time [Landmark] filed its petition* requesting annexation, its property was contiguous with Carmel's borders." Steele, 836 N.E.2d at 978 (emphasis added). The underlying rationale for this view is that the relevant statute dictates that a petition for annexation must include a request for "an ordinance annexing the area described in the petition." I.C. § 36-4-3-5.1(a)(1). Thus, because the AMLI property described in the petition did not and could not extend to the southern border of 146th Street, the resulting ordinance was essentially rendered a nullity.

We first observe that the Legislature has afforded municipalities several ways to annex territory. For example, a municipality may annex contiguous territory by re-defining its entire corporate boundaries, I.C. § 36-4-3-3 ("section 3"); a municipality may annex contiguous territory (and sometimes non-contiguous territory) by describing particular property to be added, I.C. § 36-4-3-4 ("section 4"); a municipality may annex contiguous territory by accepting a petition submitted by less than all of the landowners residing in the territory, I.C. § 36-4-3-5 ("section 5"); or, as here, a municipality may annex contiguous territory by accepting a petition submitted by one hundred percent (100%) of the landowners residing in the territory, I.C. § 36-4-3-5.1 ("section 5.1"). Sections 3 and 4 are commonly referred to as "involuntary" annexation statutes. Under this regime a municipality may annex territory on its own initiative and may prevail in its efforts even over the objection of affected remonstrators provided statutory provisions are met. See I.C. § 36-4-3-11 to -13. Sections 5 and 5.1 are commonly referred to as "voluntary" annexation statutes. Under this regime a municipality may annex territory when requested to do so by landowners of contiguous property. Tying together these alternative methods is the municipality's adoption of an annexation ordinance.[3] We will return to this point momentarily. We pause here to delineate additional aspects of the voluntary annexation statutes.

---

[3] See, e.g., section 3 ("The legislative body of a municipality may, *by an ordinance* defining the corporate boundaries of the municipality, annex territory that is contiguous to the municipality . . . .") (emphasis added); section 4 ("The legislative body of a municipality may, *by ordinance*, annex any of the following: . . . .") (emphasis added); section 5 (petition filed by less than all landowners "*requesting an ordinance* annexing the area described in the petition") (emphasis added); section 5.1 (petition filed by one hundred percent of the landowners "*requesting an ordinance* annexing the area described in the petition") (emphasis added).

Indiana Code sections 36-4-3-5 and 36-4-3-5.1 provide in relevant part that owners of land located outside of but contiguous to a municipality may file a petition requesting the municipality to annex property described in the petition. See I.C. § 36-4-3-5; I.C. § 36-4-3-5.1. The municipality then may adopt an ordinance annexing the property. Id. An owner of land located within one-half mile of the territory "proposed to be annexed" may appeal the annexation in court on grounds that the territory "sought to be annexed" is not contiguous to the municipality's existing borders. I.C. § 36-4-3-15.5(a)-(b). If the parties' evidence shows the territory "sought to be annexed" is contiguous to the annexing municipality, then the court "shall deny the appeal and dismiss the proceeding." I.C. § 36-4-3-15.5(c). But if the evidence does not establish contiguity then "the court shall issue an order to prevent the proposed annexation from taking effect." Id. "[T]erritory sought to be annexed may be considered 'contiguous' only if at least one-eighth (1/8) of the aggregate external boundaries of the territory coincides with the boundaries of the annexing municipality." I.C. § 36-4-3-1.5.

In this case the Court of Appeals determined that Indiana Code section 36-4-3-15.5 ("section 15.5") is ambiguous because the phrases territory "proposed to be annexed" and territory "sought to be annexed" are susceptible to different meanings. Accordingly the court concluded that the trial court properly considered whether the territory described in Landmark's petition, in contrast to the territory described in the annexation ordinance, was contiguous to Carmel's municipal borders.

The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. City of N. Vernon v. Jennings Nw. Reg'l Util., 829 N.E.2d 1, 4 (Ind. 2005). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Poehlman v. Feferman, 717 N.E.2d 578, 581 (Ind. 1999). Clear and unambiguous statutes leave no room for judicial construction. Id. However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. Amoco Prod. Co. v. Laird, 622 N.E.2d 912, 915 (Ind. 1993). And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to,

6

and implement the intent of the Legislature.  Ind. Civil Rights Comm'n v. Alder, 714 N.E.2d 632, 637 (Ind. 1999).  To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute.  Ind. Dep't of Pub. Welfare v. Payne, 622 N.E.2d 461, 466 (Ind. 1993).  We also examine the statute as a whole.  Matter of Lawrance, 579 N.E.2d 32, 38 (Ind. 1991).  And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.  State ex rel. Hatcher v. Lake Super. Ct., Room Three, 500 N.E.2d 737, 739 (Ind. 1986).

We agree that section 15.5 is somewhat ambiguous.  On the one hand the statute suggests that a petition requesting voluntary annexation must set forth the subject property in the petition itself.  On the other hand the statute suggests that the subject property need only be described in the annexation ordinance.  However, applying the foregoing principles of statutory interpretation we conclude that construing the phrases territory "proposed to be annexed" and territory "sought to be annexed" as referring to territory described in the petition would produce a result that the Legislature could not have intended.

First, section 5.1 evidences a legislative intent to expedite the annexation process.  The Legislature altered the requirements for holding a public hearing on the proposed annexation ordinance.[4]  Also, notice requirements have been minimized.  See I.C. § 36-4-3-5.1(b) (stating "Sections 2.1 [public hearing notice] and 2.2 [notice by certified mail] of this chapter do not apply to an annexation under this section").[5]  Additionally, the Legislature reduced the time a municipality must wait to adopt the ordinance after the public hearing is held.[6]  As between the

---

[4] Compare I.C. § 36-4-3-5.1(e) (stating the municipality may hold a public hearing on the annexation ordinance no later than thirty days after the petition is filed) with I.C. § 36-4-3-2.1(b) (stating the municipality shall hold a public hearing not earlier than sixty days after the date the ordinance is introduced).

[5] Although not germane to our review, we observe the Legislature has also eliminated certain of these requirements for some involuntary annexations as well.  See I.C. § 36-4-3-2.2 (stating this section does not apply to annexation under sections 4(a)(2), 4(a)(3), 4(b), 4(h) or 4.1).

[6] Compare I.C. § 36-4-3-5.1(f) (stating the municipality may adopt the ordinance not earlier than fourteen days after the hearing) with I.C. § 36-4-3-2.1(c) (stating a municipality may adopt an ordinance not earlier than thirty (30) days or not later than sixty (60) days after the hearing).

7

two voluntary annexation statutes, the Legislature reduced the time a landowner must wait before he or she can file the petition with the court if the municipality does not adopt an ordinance after receiving the petition.[7] Importantly, the Legislature altered the procedure through which a voluntary annexation under section 5.1 may be contested. Generally, landowners residing within an annexed territory have a right to remonstrate, see I.C. § 36-4-3-11,[8] but under section 5.1 the Legislature has specifically eliminated that right. Rather, objecting landowners have been granted the right to appeal on the very limited grounds of contesting contiguity. See I.C. § 36-4-3-5.1(i);[9] see also I.C. § 36-4-3-15.5(b). And if there are no objections, the Legislature has reduced the time before which the annexation ordinance takes effect.[10] Allowing judicial inquiry into the sufficiency of an annexation petition in which one hundred percent of the landowners essentially ask a municipality to "please take my property" has the potential of thwarting this expedited process.

Second, and perhaps more importantly, an appeal from the adoption of an annexation ordinance under section 15.5 is the same whether the proposed annexation is voluntary or involuntary. See I.C. § 36-4-3-15.5(a) to (b). That is, a landowner within one-half mile of the proposed annexation territory can appeal the ordinance under section 15.5 on the ground that the territory the municipality is attempting to bring within its jurisdiction is not contiguous to the municipality's borders. Where the annexation is involuntary there is no petition for the trial court to consider. Rather the court must look to the ordinance to determine whether the territory in question is or is not contiguous. There is nothing in the structure or language of the statute

---

[7] Compare I.C. § 36-4-3-5.1(h) (stating that if the municipality does not adopt an annexation ordinance within 60 days of receiving the petition the landowners can file a duplicate petition with the court) with I.C. § 36-4-3-5(c) (granting the municipality 150 days to pass the ordinance before landowners can file the petition with the court).

[8] To remonstrate a written remonstrance must be signed by "at least sixty-five percent (65%) of the owners of land in the annexed territory; or the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory." I.C. § 36-4-3-11(a).

[9] "A remonstrance under section 11 of this chapter may not be filed. However, an appeal under section 15.5 of this chapter may be filed." I.C. § 36-4-3-5.1(i).

[10] Compare I.C. § 36-4-3-7(f) (In the absence of an appeal, the ordinance initiated under section 5.1 takes effect not less than thirty (30) days after its adoption and upon filing and recording under section 22.) with I.C. § 36-4-3-7(a) (Generally, in the absence of remonstrance or appeal the ordinance takes effect at least ninety (90) days after its publication and upon the filing required under section 22.).

suggesting the Legislature intended the trial court to do anything differently simply because the annexation is voluntary. Essentially it is the ordinance that describes the area to be annexed, it is the ordinance that requires publication before a hearing, and it is the post-hearing adoption of the ordinance that is appealed. Whether the voluntary annexation petition – which triggered the adoption of the ordinance – is faulty in some respect is a matter between the municipality and the landowners that filed the petition.

II.

We next address a claim the Steeles advocated before the trial court, and to which the Court of Appeals referred in its opinion; namely, that due to an Interlocal Agreement between the City of Carmel, the Town of Westfield, and Hamilton County, Carmel is prohibited from annexing property across or through 146th Street.

Generally, "Interlocal Agreements," also referred to as "Interlocal Cooperation Agreements," are formal vehicles through which municipalities or political subdivisions may eliminate barriers imposed by jurisdictional lines in order to offer public services more efficiently. Osborne M. Reynolds, Jr., Local Government Law 43 (1982); see also I.C. § 36-1-7-1 to -15 (providing for Interlocal Cooperation Agreements). The primary types of agreements are service contracts, under which one local government provides services to another, and joint enterprise contracts, under which two or more local units jointly undertake a project. Reynolds, supra, at 42 (citing United States Advisory Commission on Intergovernmental Relations, A Handbook for Interlocal Agreements and Contracts 18 (1967)).

The record shows that in 1995 Hamilton County, the City of Carmel, and the Town of Westfield entered into an Interlocal Agreement concerning 146th Street. The agreement provided in relevant part that Hamilton County would maintain and improve the roadway and in exchange the City of Carmel and the Town of Westfield would "de-annex any portion of the right-of-way of 146th Street annexed up to this date and agree not to annex any part of the existing, or proposed, right-of-way in the future." App. at 61.

9

It is of course clear that "a municipality may not annex territory that is inside the corporate boundaries of another municipality." I.C. § 36-4-3-2. What is less clear from this record however is whether prior to Carmel's adoption of Ordinance C-265, 146th Street was indeed within the corporate boundaries of Hamilton County or the Town of Westfield. The County has not intervened in this lawsuit to assert such a claim.[11] And effective July 1996 the Legislature enacted Indiana Code section 36-4-3-2.5 which provides in pertinent part, "An annexation of territory under this chapter . . . that includes land contiguous to a public highway must also include contiguous areas of: (1) the public highway; and (2) rights-of-way of the public highway."[12]

In any event the Steeles' complaint about the impact of the agreement on the proposed annexation is outside the scope of trial court review. As we have already explained, as owners of land within one-half mile of the proposed annexed territory, the Steeles' challenge to the annexation is limited to a claim that the "territory sought to be annexed is not contiguous to the annexing municipality." I.C. § 36-4-3-15.5(b); see also Prock v. Town of Danville, 655 N.E.2d 553, 556 (Ind. Ct. App. 1995), trans. denied (Landowners may only file under section 15.5 to claim the territory to be annexed is not contiguous to the annexing municipality.). Of course, where an annexing municipality commits procedural wrongs so severe that a remonstrator's substantial rights are affected, or where fraud or discrimination are established, then judicial relief may be required. Bradley, 764 N.E.2d at 218. But no such claims have been demonstrated in this case.

In sum, according to Indiana Code section 36-4-3-15.5(c), "If the evidence establishes that the territory sought to be annexed is contiguous to the annexing municipality, the court shall deny the appeal and dismiss the proceeding." For our purposes the Interlocal Agreement has no bearing on the determination of whether the AMLI property is contiguous to Carmel's existing

---

[11] The Town of Westfield intervened in this matter and filed a Post Hearing Brief In Support of Dismissing Carmel's Annexation. App. at 6. However, the Town apparently has not been otherwise involved in this litigation and is not a party to this appeal.

[12] Whether this statute required the City of Carmel to include 146th Street and its rights-of-way in Ordinance C-265 notwithstanding the existence of the Interlocal Agreement, or whether the City of Carmel has breached its agreement with the Town of Westfield and Hamilton County, are issues not before us. We thus express no opinion concerning them.

municipal borders.  See Delph v. Town Council of Fishers, 596 N.E.2d 294, 297 (Ind. Ct App. 1992) (stating that under section 15.5 adjacent landowners cannot raise other matters to the annexation that do not bar a finding of contiguity of the municipality with the annexed territory).

**Conclusion**

The legal description in annexation Ordinance C-265 describing territory the City of Carmel sought to annex demonstrates that the territory is contiguous to the City's corporate boundaries.  The trial court thus erred in failing to deny the Steeles' appeal and dismiss the proceeding.  We therefore reverse the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.