ATTORNEY FOR PETITIONER:
**KERA L. PAOFF**
PAOFF & ROBINSON, LLC
Toledo, OH

ATTORNEYS FOR RESPONDENT:
**MARK E. GIAQUINTA**
GIAQUINTA LAW OFFICES LLC
Fort Wayne, IN

**NICHOLAS M. BRADY**
LEWIS WAGNER & TRIMBLE
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED
Mar 13 2026, 3:19 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IBEW LOCAL 305,          )
                         )
  Petitioner,            )
                         )
  v.                     )     Case No. 25T-TA-00003
                         )
ALLEN COUNTY ASSESSOR,   )
                         )
  Respondent.            )

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**March 13, 2026**

MCADAM, J.

This case requires the Court to determine the meaning of the word "school" as it is used in Indiana Code § 6-1.1-10-36.3. Under the statute, property is totally exempt from property taxation if it is predominantly occupied or used for an educational purpose by a "not-for-profit school." Though the ordinary and usual meaning of the word "school" is an institution for instruction or teaching, the Indiana Board of Tax Review concluded that the legislature intended a narrower meaning and limited the word to include only

"institutions accredited or regulated by the Indiana Department of Education." (Cert. Admin. R. at 1366 ¶ 40.) The Court holds that departure from the plain meaning of the word "school" is unsupported by the text and rejects the Board's narrow definition. Accordingly, the Court reverses the Board's determination and remands the case for reconsideration.

## FACTS AND PROCEDURAL HISTORY

International Brotherhood of Electrical Workers, Local Union No. 305 ("Local 305") is an Indiana not-for-profit corporation that owns property in Allen County, Indiana, consisting of approximately 0.64 acres of land and a building of approximately 7,680 square feet. The property is used and occupied more than fifty percent of the time by the Fort Wayne Electrical Joint Apprenticeship and Training Committee Trust Fund ("JATC") to operate an apprenticeship program.

The JATC is an employee welfare benefit plan operating as a trust fund created jointly by Local 305 and the Fort Wayne Division, Central Indiana Chapter of the National Electrical Contractors Association. Local 305 and the Association each appoint three of the six trustees who manage the JATC. The trust acts as a training fund to "provide education and training to apprentices in the electrical industry." (Cert. Admin. R. at 1355–56 ¶ 9.) To provide this education, the JATC explains that it employs administrators and staff and operates with dedicated facilities for classrooms, administration, and storage.

The JATC's apprenticeship program combines classroom instruction with on-the-job training in the electrical trade, including at least 900 hours in the classroom and 8,000 hours on the job over five years. Classes are taught by both experienced

2

electricians and Ivy Tech Community College instructors during regularly scheduled evening hours based on a standard September through June academic year. The program's curriculum is reviewed and approved by multiple organizations, including the United States Department of Labor's Office of Apprenticeship and Ivy Tech Community College. Graduates receive both a certificate from the Department of Labor and an Associate of Applied Science degree from Ivy Tech. According to an affidavit from one of JATC's trustees, the program is not restricted to union members; the JATC program is open to the public and graduates are free to work for whomever and wherever they want.

Claiming that JATC's apprenticeship program was a not-for-profit school with an educational purpose, Local 305 applied for a 100% property tax exemption on the subject property for the 2020 and 2022 assessment years. The Allen County Property Tax Assessment Board of Appeals wholly denied the exemption for 2020 and partially denied the exemption for 2022, both of which were appealed by Local 305 to the Indiana Board of Tax Review. Instead of a trial before the Indiana Board, the parties submitted a stipulated record and wrote briefs to present their case to the Indiana Board. Because the parties agreed that the JATC used the subject property more than 50% of the time for educational purposes during the assessment years, the parties and the Board agreed that the case "turn[ed] on whether the [JATC] qualifies as a 'school.'" (Cert. Admin. R. at 1352–53 ¶ 1; *see* Cert. Admin. R. at 876 ¶ 10, 1359 ¶ 22.)

The Indiana Board concluded that the JATC did not qualify as a "school" under Indiana Code § 6-1.1-10-36.3(c)(2) and granted only a partial property tax exemption for the JATC's educational purpose. It determined that "the legislature likely intended a

3

narrow, more technical definition" of the term "school" in the predominant-use statute "limited to institutions accredited or regulated by the Indiana Department of Education." (Cert. Admin. R. at 1366 ¶ 40.) Because the JATC was not accredited by the Department of Education, the Board therefore denied Local 305 a 100% exemption and instead granted it an exemption proportional to the time the property was used for educational purposes, which amounted to 62.5%. Local 305 then filed an appeal with this Court.

## STANDARD OF REVIEW

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, which closely mirrors the language governing judicial review of administrative decisions under Indiana's Administrative Orders and Procedures Act. *Compare* IND. CODE § 33-26-6-6(e) (2026) *with* IND. CODE § 4-21.5-5-14(d) (2026). The party seeking to overturn the final determination of the Board bears the burden of demonstrating its invalidity. IND. CODE § 33-26-6-6(b). Challengers must demonstrate that they have been prejudiced by a final determination of the Board that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. IND. CODE § 33-26-6-6(e). The Board's legal conclusions are reviewed *de novo,* and its factual determinations are afforded deference when they are supported by substantial and reliable evidence. *Majestic Props., LLC v. Tippecanoe Cnty. Assessor*, 241 N.E.3d 642, 644 (Ind. Tax Ct.

2024) (*citing Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017)).

## DISCUSSION

As was the case at the administrative level, the sole issue presented for consideration on appeal is whether the JATC is a "school" for purposes of Indiana Code § 6-1.1-10-36.3 (2020) (the "predominant-use statute"). The parties agree on the case's general framework: if the JATC is a "school," then the property is wholly exempt from property taxation under the predominant-use statute; if not, the property is only partially exempt.

The Indiana Board determined that the JATC was not a "school" within the meaning of the statute because the word "exclude[s] entities, like the [JATC], that offer post-secondary or higher education and that are not regulated by the Indiana Department of Education." (Cert. Admin. R. at 1363 ¶ 33; *see* Cert. Admin. R. at 1370 ¶ 53.) The Board based its decision on dictionary definitions of the word "school" and statutory definitions involving the word "school" appearing in other sections of the Indiana Code. It reasoned that "in the context of Indiana's predominant-use statute, the legislature likely intended a narrow, more technical definition of the term school that is limited to institutions accredited or regulated by the Indiana Department of Education." (Cert. Admin. R. at 1366 ¶ 40.) The question for the Court, therefore, is whether the word "school" as it is used in the predominant-use statute can include an organization like the JATC, which is not regulated by the Indiana Department of Education and which provides private instruction to adults in a technical subject or trade.

After consulting multiple definitions of the word from contemporaneous dictionaries to illuminate the word's plain meaning, the Court finds that the Board's interpretation of "school" is too limited. The ordinary and usual meaning of the word is broad and includes many different types of institutions providing instruction on a variety of subjects. Nothing in the general language definitions or the context of the statute justifies adding restrictions based on the age of the pupil or the regulatory framework within which the institution operates. These erroneous restrictions unnecessarily limit Indiana Code § 6-1.1-10-36.3, as educational establishments like the JATC can qualify as schools for purposes of subsection (c)(2).

## I.      The statutory framework

The general rule is that tangible property located in Indiana is subject to taxation. *See* IND. CODE § 6-1.1-2-1 (2026). That rule, however, is not universal, as the legislature has provided numerous exemptions from taxation consistent with its policy judgments. *See generally* IND. CODE § 6-1.1-10-1 to -54 (2026). In this case, the JATC seeks to qualify for one such exemption, Indiana Code § 6-1.1-10-16(a), which exempts property that is "owned, occupied, and used by a person for educational . . . purposes." (Cert. Admin. R. at 2, 14.)

The extent of the exemption provided by Section 6-1.1-10-16(a) depends on the use of the property. *See* IND. CODE § 6-1.1-10-36.3. Property that is exclusively used or occupied for an exempt purpose is totally exempt. IND. CODE § 6-1.1-10-36.3(c)(1). Property that is predominantly (i.e., more than 50% of the time), but not exclusively, used or occupied for an exempt purpose is partially exempt in proportion to the amount of its exempt use or occupancy. IND. CODE § 6-1.1-10-36.3(a), -(c)(3). However, property

6

that would be otherwise partially exempt may be totally exempt if the property is used or occupied by a "church, religious society, or not-for-profit school." IND. CODE § 6-1.1-10-36.3(c)(2).

The predominant-use statute does not define the term "not-for-profit school." Instead, the question is left to the courts to decide. Here, the parties agree that the subject property is occupied and used for educational purposes by the JATC a majority of the time.[1] There also appears to be no dispute that the JATC is a charitable trust which does not operate for profit. (*See, e.g.*, Pet'r's Br. at 3*;* Resp't's Br. at 20–21.) The parties' sole point of contention is whether the JATC is a "school" within the meaning of the predominant-use statute. As noted above, if it is a "school," then its predominant usage as such would qualify the property for a 100% exemption. *See* IND. CODE § 6-1.1-10-36.3(c)(2). If it is not, then the property would only qualify for a partial exemption based on the amount of exempt usage. *See* IND. CODE § 6-1.1-10-36.3(c)(3).[2]

II.     **The plain and ordinary meaning of "school" is broad, encompassing a variety of educational organizations.**

When interpreting a statute, the Court must first "determine whether the legislature has spoken clearly and unambiguously on the point in question." *City of*

---

[1] The parties also agreed that the educational purpose of the ownership of the property was not at issue in this case. (*See* Cert. Admin. R. at 876 ¶ 10, 1361 ¶ 29.)

[2] Both parties reference Indiana Code § 6-1.1-10-20, which exempts from tax property that is "owned by a manual labor school, a technical high school, a trade school, or a college" and used and occupied by the school or college for educational purposes. IND. CODE § 6-1.1-10-20 (2026). The Court need not grapple with this statute or its interaction with Indiana Code § 6-1.1-10-36.3 as neither party argues that Section 20 applies to the property in this case or otherwise preempts the application of Section 36.3.

*Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). When it has, the words in the statute must be understood in their "plain, or ordinary and usual, sense" unless doing so would be "plainly repugnant to the intent of the legislature or of the context of the statute." IND. CODE § 1-1-4-1 (2026). Unless a technical meaning applies, courts therefore "avoid legal or other specialized dictionaries . . . and turn instead to general-language dictionaries." *Rainbow Realty Grp. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019); *see also B.L. Reever Transp., Inc. v. Indiana Dep't of State Revenue*, 226 N.E.3d 834, 840 (Ind. Tax Ct. 2024). This ensures that "virtually anyone competent to understand" the language of a statute would understand it to have the same meaning. *Johnson Cnty. Farm Bureau Co-op. Ass'n, Inc. v. Indiana Dep't of State Revenue*, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991), *aff'd*, 585 N.E.2d 1336 (Ind. 1992) (quoting *Hutton v. Phillips*, 70 A.2d 15, 17 (Del. Super. Ct. 1949)). "Clear and unambiguous statutes leave no room for judicial construction" and do not require "any rules of construction" other than to give the words their plain, ordinary, and usual meaning. *Steele*, 865 N.E.2d at 618.

The legislature's use of the term "school" in Indiana Code § 6-1.1-10-36.3 is not ambiguous; general language dictionaries all define the word broadly to include a wide variety of educational institutions. The American Heritage Dictionary of the English Language, published just three years before the predominant-use statute was first enacted in 1983, provides five definitions of the word "school" that are applicable to the statutory context of occupying or using a property for an exempt purpose like education:

- "An institution for the instruction of children."

- "An institution for instruction in a skill or business."

- "A college or university."

- "An institution within a college or university for instruction in a specialized field."

- "A place of instruction; the building or group of buildings in which instruction is given or in which students work and live."

*School*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1162 (2d ed. 1980) [hereinafter AMERICAN HERITAGE]. Webster's New World College Dictionary closely parallels this definition and relates the meanings according to a unifying principle that cuts across specific institutional forms. It defines a "school" as an "institution for teaching and learning; establishment for education; specif., a) an institution for teaching children b) a place for training and instruction in some special field, skill, etc. . . . c) a college or university." *School*, WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE EDITION 1201 (1988) [hereinafter WEBSTER'S NEW WORLD COLLEGE]. Both the American Heritage and Webster's definitions mirror those found in other well-respected dictionaries of the time.[3]

Together, these definitions make clear that the word "school," understood in its ordinary and usual sense, is not constrained by rigid notions of form. A school can range from a small, independent entity to a large, multi-faceted institution like a college or university. *See School*, AMERICAN HERITAGE 1162 (defining "school" without reference to size or organizational complexity). A school can be public or private. *See id.* (defining

---

[3] *See, e.g., School*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1715 (2d ed. 1987) (defining "school" as "1. an institution where instruction is given, esp. to persons under college age . . . . 2. an institution for instruction in a particular skill or field. 3. a college or university."); *School*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2031 (1961) (defining "school" in part as "organized source of education or training: as (1): an institution for the teaching of children: an elementary or secondary school (2): an institution for specialized higher education usu. within a university . . . (3): college, university . . . (4): an establishment for teaching a particular skill or group of skills").

"school" without reference to ownership or operational structure). A school can educate children or adults. *See id*. (providing multiple definitions of "school" with no age restrictions). And a school is not limited to a particular subject matter or field of study. *See id*. (defining "school" with only general references to fields of study).

At its core, a school is simply an institution for instruction in one or more fields of study. It possesses some degree of structure, organization, and continuity. *Cf. Institution*, AMERICAN HERITAGE 680 (defining "institution" as "[a]n established organization; especially, one dedicated to public service, as a university."). It has an aim to educate, teach, or instruct. *See School*, WEBSTER'S NEW WORLD COLLEGE 1201 (a school is an "institution *for* teaching and learning," or "establishment *for* education") (emphases added). And it does, in fact, deliver education, teaching, or instruction. *See School*, THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1715 (2d ed. 1987) (defining "school" in part as "an institution where instruction is given"); *School*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2031 (1961) (defining "school" to include an "organized source of education or training").

**III.    The Board's narrow definition of "school" is inconsistent with the ordinary meaning of the word.**

Although the Board examined the ordinary and usual meaning of the word as part of its analysis, the Board concluded that, "in the context of Indiana's predominant-use statute, the legislature likely intended a narrow, more technical definition of the term school that is limited to institutions accredited or regulated by the Indiana Department of Education." (Cert. Admin. R. at 1366 ¶ 40.) According to the Board, the word "school" does not include institutions "that offer post-secondary or higher education" and

includes only institutions that "educate people under college age". (Cert. Admin. R. at 1366 ¶¶ 33, 40.) The Board relies on several statutory definitions of the word "school" from other parts of the Indiana Code to support its analysis and discusses two others which the Assessor emphasizes: Indiana Code §§ 22-4.1-25-1.5 (defining "school"), 22-4-2-37 (same), 34-31-10-6 (same), 20-18-2-15 (defining "public school"), and 20-18-2-18.7 (defining "state accredited nonpublic school"). Although it does not explain why it believes these other definitions should be given controlling effect, the Board reasons that the definitional focus on "institutions offering elementary or secondary education" indicates that the legislature intended to similarly limit the meaning of "school" in Indiana Code § 6-1.1-10-36.3. (Cert. Admin. R. at 1365 ¶ 39, 1366 ¶ 40.)

The Board, however, gives too much weight to these other statutory definitions of "school" which are unrelated to the text of the predominant-use statute. While definitions of similar terms in other statutes are "entitled to consideration" and can provide helpful context or guidance, *Allen v. Allen*, 54 N.E.3d 344, 347 (Ind. 2016), courts must be mindful to "resist the temptation to import" a definition from another part of the Indiana Code, *Rainbow Realty*, 131 N.E.3d at 174. In this instance, the Board's importation of other statutory definitions is misplaced for two primary reasons. First, three of the five statutes it mentions did not exist when the legislature enacted the predominant-use statute in 1983 and therefore are incapable of revealing the legislature's understanding of the word "school" in Indiana Code § 6-1.1-10-36.3. The legislature could not have anticipated the definitions of terms that were added more than twenty years after the word "school" was added to the predominant use statute. *See* Pub. L. No. 220-2013, § 3, 2013 Ind. Acts 3123 (adding IND. CODE § 34-31-10-6 in 2013); Pub. L. No.

11

191-2018, § 24, 2018 Ind. Acts 2743 (adding IND. CODE § 22-4.1-25-1.5 in 2018); Pub. L. No 92-2020, § 12, 2020 Ind. Acts 623 (adding IND. CODE § 20-18-2-18.7 in 2020). Second, and of equal importance here, none of the definitions offered by the Board or the Assessor purport to provide an all-encompassing definition of the word "school" for all purposes in all statutes. All five statutes referenced by the Board and the Assessor are expressly limited in their application to specific sections of the Indiana Code, none of which include Section 6-1.1-10-36.3—the statute at issue in this case. *See* IND. CODE § 20-18-2-15 (2026) (defining "public school" "for purposes of [Title 20]"); IND. CODE § 22-4.1-25-1.5 (2026) (defining "school" "[a]s used in" Article 4.1 of Chapter 25 of Title 22); IND. CODE § 22-4-2-37 (2026) (defining "school" for "purposes of IC 22-4-8-2(j)(3)(C)"); IND. CODE § 34-31-10-6 (2026) (defining "school" "as used in" Article 31 of Chapter 10 of Title 34); IND. CODE § 20-18-2-1 (explaining that IND. CODE § 20-18-2-18.7 applies throughout Title 20). As the Indiana Supreme Court has noted, "[e]xamples abound of the legislature's applying a definition throughout the entire code." *Rainbow Realty*, 131 N.E.3d at 174. "The legislature could likewise have done that here. But it did not." *Id*.[4]

---

[4] The choices of the legislature, as reflected in the language it uses, must be respected even when the choices are not common. The Board overlooks this when it relies on a quote from a legal encyclopedia embedded in the definition of "school" from the 11th Edition of Black's Law Dictionary, which states that the word "'school' frequently has been defined in constitutions and statutes as referring only to the public common schools" and "[w]hen used in a statute or other contract, 'school' usually does not include universities, business colleges, or other institutions of higher education." (*School*, Black's Law Dictionary 1613 (11th ed. 2019); *see* Cert. Admin. R. at 1365 ¶ 38 (quoting text from BLACK'S LAW 11th edition that in turn cites 68 AM. JUR. 2D SCHOOLS § 1 at 355 (1993)).) The fact that the word "school" is "usually" defined narrowly in statutes and constitutions does not alter its plain meaning. In fact, that the word "school" is commonly limited in statute is an indication that the absence of limitations implies the word's plain meaning, however broad it may be.

The use of narrow, targeted, or context-specific definitions of "school" in some parts of the Code does not mean the legislature intended to impose a narrow meaning elsewhere. To the contrary, that the legislature did not define the word "school" for purposes of the predominant-use statute found in Section 6-1.1-10-36.3, but provided limited definitions elsewhere, implies that the word "school" carries its ordinary and usual meaning in the absence of narrowing language. Courts presume that the legislature acts with knowledge of applicable case law and existing statutes when it enacts legislation. *See Garrison v. Sevier*, 165 N.E.3d 996, 999 n.1 (Ind. Ct. App. 2021) (noting that courts "presume the legislature knows the existing statutes when it adopts other statutes and to have meant what it said" (internal quotation marks omitted)), *trans. denied*. And, by extension, courts also presume the legislature acts with knowledge of the plain and ordinary meaning of the words it chooses. *Cf. NIPSCO Indus. Grp. v. N. Indiana Pub. Serv. Co.*, 100 N.E.3d 234, 242 (Ind. 2018), *modified on reh'g* (Sept. 25, 2018) ("[W]e presume the legislature uses undefined terms in their common and ordinary meaning."). Here, the many examples cited by the Board and the Assessor confirm that the legislature is aware of the broad meaning carried by the word "school" and knows how to narrow it when it wants to do so. Thus, when the legislature chose to use the word "school" in the predominant-use statute and only limited the term with the phrase "not-for-profit," it is reasonable to presume that this was done with complete knowledge of the full, broad meaning of the word "school"—a meaning that encompassed both elementary and secondary schools educating children as well as the

wide range of other educational institutions providing instruction. Nothing in the statute suggests the Court should presume anything less.[5]

### IV.   The Board's Misapplication of the Law was Not Harmless Error.

Having determined that the Board applied too narrow a definition of the word "school," the Court must evaluate whether that error "merits reversal" as required by the judicial review statute governing Board determinations, Indiana Code § 33-26-6-6(e). *Madison Cnty. Assessor v. Kohl's Indiana, LP*, 272 N.E.3d 592, 602 (Ind. Tax Ct.), *superseding on reh'g*, 268 N.E. 2d 873 (Aug. 22, 2025). Under that statute, this Court may only overturn an erroneous determination of the Board when the "person seeking judicial relief has been prejudiced" by the error. IND. CODE § 33-26-6-6(e). Prejudice is approached as a question of harmless error and turns on whether the error could affect the outcome of the case reached by the Board. *Kohl's*, 272 N.E.3d at 602. If this Court determines that an error is not harmless, the appropriate course is for the Court to remand the case to the Board. *Id.*; *see also* IND. CODE § 6-1.1-15-8(a) (2026) ("If a final

---

[5] The Board also attempts to support its narrow definition with a legal dictionary and the first-listed definitions of "school" appearing in two general language dictionaries, but neither can rehabilitate the Board's conclusion. First, a legal dictionary is unpersuasive as courts "generally avoid legal or other specialized dictionaries" in the interpretation of non-specialized terms in statutes. *Rainbow Realty*, 131 N.E.3d at 174. Second, while many dictionaries may list the education of children first in their list of definitions for "school," this positioning alone does not mean that definition is the most important, most frequent, or most appropriate. Dictionaries may arrange definitions in a variety of ways, including in historical order, for convenience of use, or in groups based on related meanings or part of speech. *See Order of Senses*, *Definitions*, MERRIAM-WEBSTER, https://www.merriam-webster.com/help/explanatory-notes/dict-definitions (last visited Mar. 10, 2026) ("The order of senses within an entry is historical: the sense known to have been first used in English is entered first."); *Order of Senses*, *The Definitions*, *Guide to the Use of the Dictionary*, WEBSTER'S NEW WORLD COLLEGE (ordering definitions by historical usage); *Order of Senses*, *Guide to the Online American Heritage Dictionary*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://ahdictionary.com/word/howtouse.html (last visited Mar. 10, 2026) (noting that definitions "are arranged for the convenience of the reader with the central and often the most commonly sought meaning first"); *Order of Definitions*, *Guide to the Dictionary*, AMERICAN HERITAGE (words are not ordered by "statistical frequency").

determination by the Indiana board is not affirmed under the decision of the tax court, the matter shall be remanded to the Indiana board with instructions to the Indiana board."); *Indiana State Bd. of Health Facility Adm'rs v. Werner*, 841 N.E.2d 1196, 1209 (Ind. Ct. App.), *decision clarified on reh'g*, 846 N.E.2d 669 (Ind. Ct. App. 2006) (noting that, with limited exception, "remand is the appropriate remedy for improper administrative agency action").

The administrative record in this case reveals substantial evidence that could support an inference that the JATC is a "school" within the plain meaning of the word. The evidence suggests that:

- The JATC is an institution established as a charitable trust with a regular complement of administrators and staff as well as dedicated facilities for classrooms, administration, and storage. (*See* Cert. Admin. R. at 1123–31, 1357–58 ¶¶ 16–18.) It offers classes on a regular academic calendar from September through June, with meetings on designated evenings during scheduled hours. (*See* Cert. Admin. R. at 645, 1123 ¶ 17; *see generally* Cert. Admin. R. 1222–24.)

- The JATC "uses its funds solely to educate enrollees so they can become skilled electrical workers" and "was created to, among other things, provide education and training to apprentices in the electrical industry, to upgrade training for journeymen, and to provide related benefits to [both Local 305] employees and other eligible apprentices." (Cert. Admin. R. at 1356 ¶¶ 9, 12.) Enrollment is open to the general public, and the JATC actively recruits members from an array of backgrounds. (Cert. Admin. R. at 1124 ¶¶ 20–21.) Students are not required to

affiliate with the Local 305 or any other union before or after graduation. (*See* Cert. Admin. R. at 1124 ¶ 22.)

- The JATC provides instruction to its students in the electrical field through a robust, structured program that educates and certifies students in the specialized field of electrical work. Students are required to complete at least 900 hours of classroom instruction and 8,000 hours of on-the-job training across five years of study. (*See* Cert. Admin. R. at 646, 1192–97, 1357 ¶ 14.) Students receive training from experienced journeymen electricians or Ivy Tech Community College instructors. (Cert. Admin. R. at 1357 ¶ 17.) The classes and curriculum are compliant with standards established by the United States Department of Labor and approved by Ivy Tech Community College. (Cert. Admin. R. at 1237, 1356 ¶ 13.) At the end of the program, graduates receive portable and industry-recognized credentials: a certificate of completion from the U.S. Department of Labor as well as a technical certificate and an Associate of Applied Science degree in Apprenticeship Technology with an electrical specialty from Ivy Tech Community College. (Cert. Admin. R. at 1124 ¶ 19; *see* Cert. Admin. R. at 1357 ¶ 17.)

Because the evidence can support an inference in favor of Local 305, the Board's error was not harmless. The Board's determination was necessitated by its interpretation that, to qualify for a full exemption under the predominant-use statute, a school could not educate adults and must be regulated by the Indiana Department of Education. Because such requirements are inconsistent with the plain, ordinary and usual meaning of the word "school," the presence of substantial evidence which could

16

support an inference that the JATC is an exempt school requires the case to be remanded to the Board for reconsideration.

## CONCLUSION

The Court REVERSES the Board's final determination and REMANDS for proceedings consistent with this opinion. On remand the Board should apply the plain, ordinary and usual meaning of "school" as described in today's decision and make any necessary factual findings.

17