

**FILED**
Jul 29 2015, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen C. Unger
Curtis T. Jones
Bose McKinney & Evans LLP
Indianpolis, Indiana

ATTORNEY FOR APPELLEES

Kent M. Frandsen
Parr Richey Obremskey Frandsen &
Patterson LLP
Lebanon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Town of Whitestown, Indiana, <br> *Appellant-Respondent,* <br><br> v. <br><br> Rural Perry Township Landowners, <br> *Appellees-Petitioners.* | July 29, 2015 <br><br> Court of Appeals Case No. <br> 29A05-1409-MI-437 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable Steven R. Nation, Special Judge <br><br> Cause No. 29D01-1308-MI-8547 |

**Bailey, Judge.**

# Case Summary

[1] In 2013, the Town of Whitestown ("Whitestown") adopted an ordinance annexing unincorporated portions of Perry Township adjacent to the town. Rural Perry Township landowners ("the Remonstrators") filed a petition to

defeat the annexation. The trial court found that the Remonstrators had satisfied statutory conditions required to defeat the annexation and ordered that the annexation not occur. Whitestown now appeals.

We reverse and remand for entry of judgment in favor of Whitestown.

# Issues

Whitestown presents three issues for our review. We restate these as two issues:

> I. Whether the trial court erred when it found that Whitestown had not satisfied the requirements of Indiana Code subsection 36-4-3-13(c); and
>
> II. Whether the trial court erred when it found that Remonstrators proved the elements of subsection 36-4-3-13(e)(2)(B), concerning the financial impact of annexation.

# Facts and Procedural History

During the events associated with this case, Whitestown has been one of the fastest-growing municipalities in Indiana. Located in Boone County, Whitestown grew through annexation to encompass portions of several unincorporated townships, including Perry Township. Whitestown's growth has been aided by its presence along the corridor for Interstate 65 ("I-65"), and Whitestown has actively encouraged businesses to locate their operations within the town. From a population of 471 in the 2000 United States Census, Whitestown's population reached 2,860 in the 2010 Census. At the time of trial

in this case, Whitestown's planners estimated that the town's population was around 4,500, and would reach nearly 14,000 by 2022. Tr. at 228-29, 233.

[5] On March 26, 2013, Whitestown adopted Ordinance 2012-22 ("the Ordinance"), whereby the town annexed to itself 28 parcels of land encompassing a total of 621.87 acres in an unincorporated portion of Perry Township adjacent to Whitestown ("the Annexation Area"). Ex. W-001. Prior to adopting the Ordinance, Whitestown had acquired from one of the eventual Remonstrators a parcel of land in unincorporated Perry Township. The parcel was on the western end of the Annexation Area, and was to be the site for a new Waste Water Treatment Plant ("WWTP" or "the Plant"), which was to provide service for Whitestown. A new water main line was to be run to the Plant along County Road 750 South, which ran through the northern end of the Annexation Area. There was a possibility that the Remonstrators would be offered access to Whitestown's water service for a yet-to-be-determined connection fee. Connection would not be compulsory, however, and construction of the Plant was set to commence and would proceed without regard to the result of the Remonstrators' challenge to the Ordinance.

[6] The Annexation Area itself was zoned as agricultural land under the Boone County Comprehensive Zoning Ordinance. Single family homes, a historic school structure, and a cemetery were scattered throughout the area. None of the plots in the Annexation Area had water service from Whitestown, and most properties used on-site septic systems for sanitation. Police service was provided by the Boone County Sheriff's Department, and fire service was

provided by a volunteer fire department. Whitestown's police and fire services occasionally assisted with police- and fire-related incidents in the Annexation Area, but did so only on an occasional, voluntary basis. The Boone County Highway Department provided road and highway maintenance for roads running through the Annexation Area.

[7] Property tax rates in Whitestown displayed a marked and consistent upward trend, whereas rates for unincorporated portions of Perry Township showed year-over-year declines. Annexation into Whitestown would result in the addition of municipal property taxes assessed upon the Remonstrators' property beyond those already assessed by the township and other taxing authorities. Property tax rates for real property incorporated in Whitestown ranged from between 64.1% (in 2008) and 94.2% (in 2012) higher than the rates assessed for unincorporated land in Perry Township. The difference in municipal taxes for other municipality/township comparisons in Boone County for the 2012 tax year averaged 33%, ranging from an 18% rate difference in Zionsville as compared to Eagle Township, to a 45% rate difference in Lebanon as compared to Center Township. To address these issues, the Annexation Ordinance included provisions delaying the effective date of the annexation for three years after the final enactment of the annexation, and abating property tax for the parcels in the Annexation Area for a period of ten years after that.

[8] On June 7, 2013, the Remonstrators filed their petition challenging the Ordinance.

On March 17, 2014, Whitestown filed a written motion requesting that the trial court enter written findings and conclusions under Trial Rule 52.

The case proceeded to a bench trial on March 18, 19, and 20, 2014. After the trial, the parties provided the trial court with proposed findings and conclusions.

On August 27, 2014, the trial court adopted the Remonstrators' proposed findings and conclusions and entered judgment, finding the Ordinance invalid and blocking Whitestown's annexation of the Annexation Area. The trial court found that Whitestown had not satisfied the statutory requirement of proving that the subdivision of the territory to be annexed was satisfied, *see* I.C. § 36-4-3-13(b)(2); and that Whitestown had not carried the burden of proof as to its need for future use of the Annexation Area. *See* I.C. § 36-4-3-13(c)(2). Accordingly, the court concluded that the annexation ordinance was invalid. The trial court also found, as a separate basis for defeating the annexation, that the Remonstrators had carried their burden of proof as to Subsection 36-4-3-13(e), which afforded a separate avenue to challenge annexation ordinances.

This appeal ensued.

# Discussion and Decision

## Standard of Review

In its appeal, Whitestown challenges a judgment presented in the form of written findings and conclusions, entered by the trial court upon Whitestown's

written motion. *See* Ind. Trial Rule 52(A). Our standard of review in these cases is well settled.

> Upon appellate review, a judgment under Trial Rule 52 may be reversed only when clearly erroneous, that is, "when the judgment is unsupported by the findings of fact and conclusions entered on the findings." *Nelson v. Marchand,* 691 N.E.2d 1264, 1267 (Ind. Ct. App. 1998). Findings are clearly erroneous when there is no evidence or reasonable inference from the evidence to support the findings, and we review only the evidence and reasonable inferences therefrom that are favorable to the judgment without reweighing evidence or reassessing the credibility of witnesses. *Id.* We owe no deference to a trial court, however, on matters of law, reviewing these *de novo. Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct.App.2006).

*Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans. denied*.

[14] We may affirm the trial court's judgment on any legal theory, so long as the trial court's findings are not clearly erroneous and support the theory adopted. *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 652 (Ind. Ct. App. 2012). Findings are only clearly erroneous when our review of the record leaves us firmly convinced that a mistake has been made. *Id.* at 651 (citing *Balicki v. Balicki*, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2012), *trans. denied*.) "The purpose of special findings is to provide the parties and the reviewing court with the theory upon which the trial judge decided the case in order that the right of review for error may be effectively preserved." *Carmichael v. Siegel*, 670 N.E.2d 890, 891 (Ind. 1996).

[15] Here, the trial court adopted verbatim the Remonstrators' proposed findings and conclusions, a matter Whitestown draws to our attention.

> As our supreme court has observed, the practice of accepting verbatim a party's proposed findings of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell-Sherman,* 796 N.E.2d 271, 273 n.1 (Ind. 2003) (citing *Prowell v. State,* 741 N.E.2d 704, 708-09 (Ind. 2001)). However, as the court also noted, verbatim reproductions of a party's submissions are not uncommon, as "[t]he trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning." *Prowell,* 741 N.E.2d at 708. The need to keep the docket moving is properly a high priority for our trial bench. *Id.* at 709. For this reason, the practice of adopting a party's proposed findings is not prohibited. *Id.* Thus, although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. *See Saylor v. State,* 765 N.E.2d 535, 565 (Ind. 2002) (citing *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind. 1998)).

*In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005).

[16]     Whitestown challenges both the trial court's findings of fact and its conclusions from those findings. The bulk of Whitestown's argument, however, centers upon the trial court's interpretation of statutory language and whether the court afforded proper deference to the town's decisions. As we noted above, we review the trial court's application of law *de novo. Argonaut,* 953 N.E.2d at 614. This is particularly so when questions of statutory construction come into play, as is the case here:

> Statutory interpretation is a question of law reserved for the court and is reviewed *de novo. In re K.J.A.,* 790 N.E.2d 155, 158 (Ind. Ct. App. 2003). The cardinal rule of statutory construction is that if a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind. 2002); *Coplen v. Omni Rests., Inc.,* 636 N.E.2d 1285, 1287

(Ind. Ct. App. 1994). Additionally, when construing a statute, the legislature's definition of a word binds us. *Ind. Office of Envtl. Adjudication v. Kunz,* 714 N.E.2d 1190, 1193 (Ind. Ct. App. 1999). When the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.* In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Id.*

*Vanderburgh Cnty. Election Bd. v. Vanderburgh Cnty. Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005).

## Legal Standard

[17] The legal standard for a remonstrance is largely prescribed by statute. The trial court found that the Remonstrators' challenge to the Ordinance succeeded under Indiana Code subsections 34-6-3-13(b), (c), and (e).[1] The court's fact-finding and its application of those provisions form the core of Whitestown's appeal.

[18] The statutory scheme that provides for municipal annexation of unincorporated township land has historically presumed the validity of an annexation ordinance. Even with statutory amendments over time, "the object of annexation has remained the same: 'to permit annexation of adjacent urban territory.'" *City of Carmel v. Certain Sw. Clay Twp. Annexation Territory Landowners*, 868 N.E.2d 793, 796 (Ind. 2007) (quoting *Rogers v. Mun. City of Elkhart*, 688 N.E.2d 1238, 1242 (Ind. 1997)). "The statutory framework has

---

[1] The General Assembly enacted revisions to these statutes effective July 1, 2015. We refer throughout to the statutes as enacted at the time of the proceedings before the trial court.

also retained the same three stages: '(1) legislative adoption of an ordinance [of annexation]… (2) an opportunity for remonstrance…, and (3) judicial review.'" *Id.* (quoting *City of Hobart v. Chidester*, 596 N.E.2d 1374, 1375 (Ind. 1992)).

[19] Because annexation is generally favored as the goal of the statutory scheme, "[a]nnexation is subject to judicial review only so far as the General Assembly has authorized it by statute." *Id.* at 797. Thus, trial courts must conduct hearings on remonstrance petitions "without a jury," I.C. § 36-4-3-12(a)(1), and must, "without delay, enter judgment on the question of the annexation according to the evidence that either party may introduce." I.C. § 36-4-3-12(a)(2).

[20] Indiana Code section 36-4-3-13 sets forth the substantive criteria upon which a trial court must review a municipality's annexation of unincorporated land. A municipality must satisfy the statutory requirements set forth in 1) either Subsection 36-4-3-13(b) *or* (c), and 2) Subsection 36-4-3-13(d).[2] I.C. § 36-4-3-13(a). The municipality must bear the burden of establishing these requirements. *City of Carmel*, 868 N.E.2d at 797. But as another panel of this Court has recently observed in applying Section 36-4-3-13(c), which is directly implicated in this appeal, the annexation statutes do not exist to allow a holding

> that a city—if it does not have impending plans to build on land that it
> seeks to annex—must sit and watch the land be used and developed in

---

[2] The trial court concluded that Whitestown established the requirement embedded in Subsection 36-4-3-13(d), which concerns the adoption of a fiscal plan, and the parties do not dispute this point.

ways that might harm or impede its future plans for urban management of the land, until the "long-term inevitability" of annexation takes place.

*Town of Fortville v. Certain Fortville Annexation Territory Landowners*, No. 30A01-1410-MI-442, Slip op. at 9 (Ind. Ct. App. Jul. 2, 2015).

[21] Subsection 36-4-3-13(b) provides:

> The requirements of this subsection are met if the evidence establishes the following:
>
> (1) That the territory sought to be annexed is contiguous to the municipality.
>
> (2) One (1) of the following:
>
>> (A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre.
>>
>> (B) Sixty percent (60%) of the territory is subdivided.
>>
>> (C) The territory is zoned for commercial, business, or industrial uses.

[22] An annexing municipality may establish either these requirements, or it may establish the elements of Subsection 36-4-3-13(c):[3]

> The requirements of this subsection are met if the evidence establishes the following:
>
> (1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth ( ¼ ), instead of one-eighth ( ⅛ ), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality.

---

[3] As noted above, a municipality must also satisfy the requirements of I.C. § 36-4-3-13(d), in addition to establishing the satisfaction of either I.C. § 36-4-3-13(b) or (c). Here, the parties stipulated to Whitestown's satisfaction of Subsection (d). Thus, we do not address the question further in our decision today.

> (2) That the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

[23]     Yet even where these requirements are met, the remonstrance statute provides an alternate route by which remonstrators may block a municipality's annexation efforts. Indiana Code subsection 36-4-3-13(e) provides:

> At the hearing under section 12 of this chapter, the court shall do the following:
>
> (1) Consider evidence on the conditions listed in subdivision (2).
>
> (2) Order a proposed annexation not to take place if the court finds that all of the conditions set forth in clauses (A) through (D) and, if applicable, clause (E) exist in the territory proposed to be annexed:
>
> > (A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:
> >
> > > (i) Police and fire protection.
> > >
> > > (ii) Street and road maintenance.
> >
> > (B) The annexation will have a significant financial impact on the residents or owners of land.
> >
> > (C) The annexation is not in the best interests of the owners of land in the territory proposed to be annexed as set forth in subsection (f).
> >
> > (D) One (1) of the following opposes the annexation:
> >
> > > (i) At least sixty-five percent (65%) of the owners of land in the territory proposed to be annexed.
> > >
> > > (ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.
> >
> > Evidence of opposition may be expressed by any owner of land in the territory proposed to be annexed.
> >
> > (E) This clause applies only to an annexation in which eighty percent (80%) of the boundary of the territory proposed to be annexed is contiguous to the municipality and the territory consists of not more than one hundred (100) parcels. At least

seventy-five percent (75%) of the owners of land in the territory proposed to be annexed oppose the annexation as determined under section 11(b) of this chapter.

[24] The remonstrators must bear the burden of proof for all of these elements, except that of Subsection 36-4-3-13(e)(2)(C). That provision includes within it the requirements of Subsection 36-4-3-13(f). Subsection 36-4-3-13(f) provides:

> The municipality under subsection (e)(2)(C) bears the burden of proving that the annexation is in the best interests of the owners of land in the territory proposed to be annexed. In determining this issue, the court may consider whether the municipality has extended sewer or water services to the entire territory to be annexed:
>
> > (1) within the three (3) years preceding the date of the introduction of the annexation ordinance; or
> >
> > (2) under a contract in lieu of annexation entered into under IC 36-4-3-21.
>
> The court may not consider the provision of water services as a result of an order by the Indiana utility regulatory commission to constitute the provision of water services to the territory to be annexed.

Thus, an annexing municipality may, despite remonstrators' proof of all the other elements of Subsection 36-4-3-13(e)(2), defeat the remonstrance by proving that annexation is in the territory's best interest.

[25] Thus, Subsection 36-4-3-13(e) establishes a kind of burden-shifting test: if the annexing municipality can prove its annexation is proper under Subsections 36-4-3-13(a) through (d), the remonstrators must, to defeat the annexation, prove the conditions of Subsections 36-4-3-13(e)(2)(A), (B), (D), and, when applicable (E). If they do so, the annexing municipality must prove the contrary of Subsection 36-4-3-13(e)(2)(C)—that despite the remonstrators' contentions, annexation is nevertheless in the best interests of the territory to be annexed.

When Subsections 36-4-3-13(a) through (d) are satisfied, failure of the remonstrators to satisfy any one of the elements of Subsection 36-4-3-13(e)(2) permits the annexation to go forward.

[26] Against this background, the trial court concluded that Whitestown had failed to satisfy several of the requirements associated with Subsections 36-4-3-13(a) through (d). The trial court concluded that while Whitestown was contiguous to the Annexation Area, the evidence did not establish that any of the three requirements of Subsection 36-4-3-13(b)(2) had been satisfied. The trial court also found that Whitestown had failed to prove the requirement of Subsection 36-4-3-13(c) that Whitestown needed and could use the Annexation Area for development in the reasonably near future. Whitestown also challenges this conclusion. Finally, the trial court concluded that the Remonstrators had carried their burden of proof as to Subsection 36-4-3-13(e), including that Whitestown had failed to carry its burden of proof as to the best interests of the Annexation Area under Subsection 36-4-3-13(f).

[27] We address each designated error in turn.

## Subsections 36-4-3-13(b) and (c)

[28] We turn first to Whitestown's arguments concerning Subsections 36-4-3-13(b) and (c). As noted above, to establish the validity of the annexation upon remonstrance, Whitestown was required to prove the requirements of either of these two subsections. The trial court concluded that Whitestown had failed to do so.

## Subsection 36-4-3-13(b)

[29]   Whitestown argues that the trial court misinterpreted the statute to require that Whitestown prove *both* Subsection 36-4-3-13(b) and (c), rather than either one. The trial court stated:

> Remonstrators in addition to satisfying the elements of subsection 13(e), have an alternative basis for challenge to this annexation that arises under subsection 13(b) and (c) of the statute. Such subsections allow the Town to annex this land *only if* (1) the resident population density is at least three persons per acre, or 60% of the land is subdivided, or the land is zoned for commercial, business or industrial use and territory *and* (2) the land is at least ¼ contiguous to existing town boundaries and "it is needed and can be used by the municipality for its development in the reasonably near future." Ind. Code § 36-4-3-13(b) and (c).

App'x at 17-18 (emphasis added).

[30]   We agree with Whitestown that the trial court appears to have misinterpreted the law. Based upon the language of the statute, Whitestown need only have carried its burden as to either Subsection 36-4-3-13(b) or 36-4-3-13(c), and the trial court erred when it concluded otherwise. In conducting our review, we assess the trial court's legal conclusions *de novo* and apply the statute as written.

## Subsection 36-4-3-13(c)

[31]   Whitestown does not, in its brief, argue that the trial court erred when it concluded that Whitestown failed to satisfy the requirements of Subsection 36-4-3-13(b). Rather, Whitestown identifies as error the trial court's conclusions as to Subsection 36-4-3-13(c), and directs us to the distinctions between what it characterizes as the "mathematical urbanization tests" of Subsection 36-4-3-

13(b)(2) and the focus in Subsection 36-4-3-13(c) on future use of the area to be annexed.  (Appellant's Br. at 28.)

[32]    Thus, on appeal, Whitestown argues for the validity of the annexation, exclusive of the shifting of the burden of proof to the Remonstrators under the five elements of Subsection 36-4-3-13(e)(2), under Subsection 36-4-3-13(c). Again, the parties stipulated to the question of contiguity, so that Subsection 36-4-3-13(c)(1) was satisfied, and the question at trial was whether the requirements of Subsection 36-4-3-13(c)(2) had been met.  To satisfy that requirement, Whitestown was required to prove that the Annexation Area was "needed and [could] be used by the municipality for its development in the reasonably near future."  The trial court found that Whitestown had failed to satisfy this requirement:

> 54.    As to [Subsection § 36-4-3-13(c)], the Court must find that this annexation is needed for the Town's development in the reasonably near future.  The Court notes that no project other than the wastewater plant has been identified as being on the drawing board.  The treatment plant will presumably obtain the needed IDEM permits and be constructed regardless of the outcome of this remonstrance.  Plans for the plant predate adoption of the Annexation Ordinance and permitting has continued while this challenge has been underway.  The evidence is the plant is not dependent on the annexation of this area. The Town may use the County road right-of-way to access the treatment plant, as permitted by Ind. Code § 8-20-1-28, and that is the Town's intent.

> 55.    The Court cannot find based upon the evidence that this annexation is driven by the Town's development needs in the reasonably near future, and therefore the requirements of [Subsection § 36-4-3-13(c)] are not met.

[33] App'x at 18-19. The court construed the statutory language, "reasonably near future," as requiring some known and well-defined anticipated future use of the Annexation Area, concluding:

> 27. The term "reasonably near future" in subsection 13(c)(2) is not defined in the statute or construed in case law, but based on the facts of this case, there are no projects except for the wastewater plant, and the possibility of the Ronald Reagan Parkway is remote and speculative.

App'x at 24-25.

[34] In its brief, Whitestown observes that the statutory framework for annexation favors the determination that an annexation is appropriate, and that the scope of judicial review in such cases is circumscribed by the statutes. *City of Carmel*, 868 N.E.2d at 796. As a result, courts are to "afford legislative judgment considerable deference" and "avoid scrutinizing legislative processes." *Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002). Thus, as in *Bradley*, we do not take on the role of "an examiner conducting an audit of a challenged fiscal plan." *Id.* Nevertheless, an annexing municipality must bear the burden of proof in establishing the validity of the annexation under Subsection 36-4-3-13(c).

[35] In addressing the requirements of Subsection § 36-4-3-13(c), our courts have largely focused on the question of the annexing municipality's purpose in initiating the annexation measure. There is an established requirement that additional tax revenues not be the sole reason for the annexation. *See West v. City of Princeton*, 901 N.E.2d 1141, 1148-49 (Ind. Ct. App. 2009), *trans. denied*;

*Crothers v. City of Fort Wayne*, 155 Ind. App. 153, 156-57, 291 N.E.2d 702, 704 (1973). Beyond that limitation, courts have focused on other advantages that might accrue to the annexing municipality from an annexation. *Crothers*, 155 Ind. App. at 156-57, 291 N.E.2d at 704-05 (finding as advantages the ability of an annexing municipality to increase its financial power, improve traffic control, add recreational facilities, and advance its planning efforts); *Smith v. Inc. Town of Culver*, 229 Ind. 665, 670, 234 N.E.2d 494, 497 (1968) (concluding that there was sufficient, if conflicted, evidence to sustain an annexation where the land to be annexed was desirable and fit with a plan to develop land beyond the territory to be annexed). As this Court explained in *In re Annexation Ordinance No. X-07-91 (Blackhawk Annexation)*, 645 N.E.2d 650 (Ind. Ct. App. 1995): "[t]he test is whether the 'city need[s] and can use the territory'" for a purpose other than the consumption of additional tax revenues. *Id.* at 656 (quoting *Chidester v. City of Hobart*, 631 N.E.2d 908, 913 n.6 (Ind. 1994)).

[36] Further, as noted above, the scope of judicial review of annexation and other legislative measures is limited to that provided by the statute enabling such review. *City of Carmel*, 868 N.E.2d at 796. And the Indiana Supreme Court has made it clear that avoiding "a 'Dillonist' mindset is in the best interests of public policy in Indiana," because "it is far less burdensome on both the courts and the Legislature for the law to presume the existence of local authority to act absent some express prohibition." *Kole v. Faultless*, 963 N.E.2d 493, 498 (Ind. 2012). And, as we noted above, the purpose of the annexation statutes is not to impose requirements that "harm or impede [a municipality's] future plans for

urban management of the land, until the 'long-term inevitability' of annexation takes place." *Town of Fortville*, No. 30A01-1410-MI-442, at 9.

[37] In this case, the trial court heard testimony from both the Remonstrators and Whitestown. The evidence that favors the judgment indicates, as the trial court concluded, that construction of the WWTP would proceed regardless of the success of the annexation effort, and that there was nothing barring Whitestown from using County Road 750 South as an entry and exit path to the Plant. Based upon this, the trial court concluded that there was no need for Whitestown to use Annexation Area, and in the absence of any clear future construction in the area, the court concluded that Whitestown could not use the Annexation Area in the reasonably near future.

[38] Yet the test prescribed under the statute is not whether the annexing municipality can make do without the territory it seeks to annex. The statutory test, as interpreted by Indiana's appellate courts, is whether Whitestown could use the Annexation Area for a purpose other than increased collection of property taxes in the reasonably near future. The trial court's findings recognized that this was the case, but construed the language of the statute too narrowly in light of the deference properly accorded under our case law.

[39] We further observe that there was ample testimony concerning the town's rapid growth and the efforts Whitestown put into encouraging, predicting, and planning that growth—and how the Annexation Area could be used for those ends. Witnesses testifying for both the Remonstrators and Whitestown

acknowledged that, other than the WWTP, there were no ongoing, confirmed projects in the Annexation Area. However, numerous witnesses for Whitestown testified concerning the rapid growth of the town, including the ongoing construction of the Eagle's Nest housing subdivision immediately to the east of the Annexation Area on the same side of County Road 750 South; Whitestown's existing plans to run forced water mains along County Road 750 South leading into the Plant; the intent of at least one remonstrator to sell property on the north side of County Road 750 South immediately across from the Annexation Area; the sale of the WWTP site to Whitestown by still another of the Remonstrators; and ongoing questions concerning the City of Lebanon's claims to exclusivity over water and sewer service within portions of Perry Township. The trial court also heard extensive testimony concerning Whitestown's plan to connect the WWTP to water lines from the Eagle's Nest housing division, which was adjacent to the Annexation Area. Further, several witnesses testified that leaving a portion of the road under the control of the Boone County Highway Department might cause substantial expenses to Whitestown in the event of road construction, as in that situation the county could insist Whitestown relocate its utility lines at the town's expense.

[40] There was no evidence presented to the trial court that Whitestown's only purpose in pursuing the Annexation Ordinance was to bolster its tax base, and no evidence presented by the Remonstrators to counter any number of the other reasons advanced by Whitestown for the annexation. The trial court's findings—wholly adopted from those proposed by the Remonstrators—were

not representative of the bulk of the evidence presented on whether Whitestown needed and could use the Annexation Area in the reasonably near future. The trial court's findings and conclusions acknowledged little of this evidence—even for the purposes of concluding that none of the evidence presented was credible or worthy of any weight. We cannot, then, conclude that Whitestown failed to carry its burden of proof under the statute—and we remind trial courts of both the deferential standard accorded to annexing municipalities, and the risks associated with wholesale adoption of a party's strongly one-sided proposed findings and conclusions.

[41] We accordingly conclude that the trial court erred in its application of the law in Subsection 36-4-3-13(c).

# Subsection 36-4-3-13(e)

[42] Whitestown also contends that the trial court erred in its findings and conclusions under Subsection 36-4-3-13(e). The statute permits remonstrators to defeat an otherwise-permissible annexation if five elements can be established related to the availability of adequate local government services for police, fire protection, and street and road maintenance from a source other than the annexing municipality, I.C. § 36-4-3-13(e)(2)(A); the financial impact of the annexation upon residents or landowners, I.C. § 36-4-3-13(e)(2)(B); the best interests of the territory to be annexed, I.C. § 36-4-3-13(e)(2)(C); and the proportion of landowners opposed to the annexation. I.C. §§ 36-4-3-13(e)(2)(D) & (E). The remonstrators must establish all elements of the statute, except for

the best-interests element; as to that element, the annexing municipality must bear the burden of proof to establish that the annexation is in the best interests of the residents or landowners affected. I.C. §§ 36-4-3-13(e)(2)(C) & 36-4-3-13(f).

[43] Whitestown's argument upon appeal centers on whether the trial court erred when it concluded that annexation would, if put into effect, have a significant financial impact upon the Remonstrators, and that the annexation was not in the best interests of the landowners.

[44] Both parties observe that while several cases decided by Indiana appellate courts have addressed Subsection 36-4-3-13(e), the specific questions presented here have not been addressed. *See City of Carmel*, *supra* (recognizing the enactment of I.C. § 36-4-3-13(e) but not applying the statute); *In re Annexation of Certain Territory to the City of Muncie, Ind.*, 914 N.E.2d 796, 806 (Ind. Ct. App. 2009) (reversing a trial court's grant of a remonstrance petition on the basis of a failure to satisfy evidentiary requirements under I.C. § 36-4-3-13(e)(2) by failing to present any specific evidence as to the actual increase in taxes or the financial effect of that increase upon specific landowners, rather than reversing based on misapplication of the law), *trans. dismissed*.

[45] As a result, we are presented with a question of statutory interpretation. As we observed earlier in our opinion, the principles of statutory interpretation in Indiana courts are well established. *See Vanderburgh Cnty. Election Bd.*, 833 N.E.2d at 510.

[46]     We turn, then, to the question of "significant financial impact." Neither *City of Carmel* nor *City of Muncie* provides direct guidance on the interpretation of the statute. *City of Muncie* recognized that in any annexation of unincorporated land by a municipality, landowners could expect to see some difference—generally an increase—in their property tax rates as a result of the "municipal tax layer," that is, an additional layer of taxation related to the greater number and variety of services offered by a municipality and the costs associated with those services. *City of Muncie*, 917 N.E.2d at 806. Yet *City of Muncie* addressed the significant financial impact question only with respect to the quantum of evidence that might be required, and concluded that the remonstrators in that case had failed to provide any evidence showing any financial impact that would be incurred by any of the landowners. *Id.*

[47]     As the trial court recognized in this case, some increase in taxation associated with the municipal tax layer was inevitable. The question presented was whether that increase would impose a "significant financial impact" upon the landowners in the Annexation Area. The parties presented evidence related to comparative municipal tax layers in other areas of the state and within Boone County. Evidence was also presented that pertained to the difference in tax rates between unincorporated Perry Township and Whitestown during the tax years from 2008 (payable in 2009) to 2012 (payable in 2013). The evidence included indications of an upward trend in the Whitestown rates during this period.

[48] Based upon this evidence, the trial court found that "an increase of 52% to 74% in property taxes is a significant financial impact on the residents of the Annexation Area." App'x at 14. The trial court stated in its conclusion that "[t]he trend line of this disparity in recent years…does not give the Court comfort that the rate difference will materially decline in the foreseeable future" and that "project[ing] tax rates thirteen years in the future requires speculation." App'x at 22-23. This statement relates to provisions within the Annexation Ordinance limiting when the ordinance itself would go into effect—three years after its final adoption date—and a ten-year abatement in the imposition of the municipal layer of taxes. That is, the Annexation Ordinance included within it provisions that would leave property taxes in the Annexation Area at their pre-annexation levels for thirteen years after the full enactment of the annexation. As to the thirteen-year period during which the Remonstrators would pay taxes as if their land were still within unincorporated Perry Township, the trial court opined that the need for speculation as to tax rates after that period "cuts against a municipality which proposes to delay imposition of municipal taxes and suggest that by the time those taxes take effect the gap will be significantly reduced." App'x at 23.

[49] We find no error in the trial court's findings of fact in this respect: the evidence supports the findings as to the amount of the municipal tax layer at the time of trial and the differences between the Whitestown layer and those of other municipalities. These findings do not, however, settle the question of what

must be satisfied to establish that an annexation "will have a significant financial impact."

[50] Addressing the thirteen-year period during which no municipal layer would be imposed, the trial court took the apparent view that Whitestown was attempting to "game the system":

> In allowing municipalities to postpone the tax impact of annexation, the General Assembly surely didn't intend that to make it more difficult for remonstrators to satisfy the "significant financial impact["] element of the statute. Using current and recent tax rates for this locale is the most reliable indicator of the municipal gap.

App'x at 23. Yet the question is not whether a particular approach to tax relief is contrary to the unexpressed spirit of the legislature in enacting the statute. Rather, it is whether the annexation "will have a significant financial impact" upon landholders or residents of the Annexation Area.

[51] On that point, we conclude that the trial court erroneously applied the law. The terms of the statute require that the Remonstrators prove that annexation "will have"—that is, would necessarily result in—a significant (and, presumably, adverse) financial effect. The trial court was free to reject as not credible the projections of Eric Reedy, Whitestown's accountant, who testified that Whitestown's municipal layer would be below that of other nearby municipalities by the time the thirteen-year period of annexation and abatement came to a close. **(Tr. at 613-14)** So, too, could it disregard the testimony of Michael Shaver, one of the town's planning consultants, that property values

would likely increase within the Annexation Area as a result of the availability of town-provided water and sewer connections. **(Tr. at 649)**

[52] Even doing so, however, there was no evidence that established that the annexation would necessarily result in an adverse financial impact to the Remonstrators once the thirteen-year annexation and abatement period ended. The only evidence of certain financial impact upon the Annexation Area is that the Remonstrators would see no imposition of a municipal tax layer in their property taxes for thirteen years after the annexation ordinance was finally adopted. And in the absence of any legislative provision barring such an accommodation to property owners in an area to be annexed, we disagree with the trial court's conclusion that Whitestown was somehow gaming the system simply by construing the statute in conformity with its plain language.

[53] We accordingly conclude that the trial court erred when it applied the statute and concluded that, after a thirteen-year period of tax delay and abatement, an uncertain future tax situation constituted a significant financial impact that would result from the annexation. The Remonstrators failed to carry their burden of proof under Subsection 36-4-3-13(e), and thus the trial court erred when it blocked the Annexation Ordinance.

# Conclusion

[54] The trial court erred in its interpretation of Indiana Code subsections 36-4-3-13(c) and (e), and in its application of the statutory provisions to its findings of

fact. We accordingly reverse the trial court's judgment, and remand the case with instructions to enter judgment in favor of Whitestown with respect to the Remonstrators' challenge to the Annexation Ordinance.

[55] Reversed and remanded with instructions.

Riley, J., and Barnes, J., concur.