

**FILED**

Aug 28 2015, 9:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Arend J. Abel
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Stephen C. Unger
Andrew M. McNeil
Bose McKinney & Evans LLP
Indianapolis, Indiana

I N  T H E

# COURT OF APPEALS OF INDIANA

American Cold Storage NA, et al.,

*Appellants-Plaintiffs,*

v.

City of Boonville,

*Appellee-Defendant*

August 28, 2015

Court of Appeals Case No.
87A01-1502-PL-76

Appeal from the Warrick Superior
Court

The Honorable S. Brent Almon,
Special Judge

Trial Court Cause No.
87D01-0810-PL-452

**Baker, Judge.**

[1] Boonville seeks to annex an area of over 1,000 acres that is adjacent to the city. A group of landowners in the annexation area filed a remonstrance petition. The current appeal is the fourth time this particular annexation ordinance has reached the appellate courts (it has been twice to the Court of Appeals and once to our Supreme Court).

[2] Here, the landowners in the annexed area appeal the trial court's order finding in favor of Boonville on the remonstrance petition. The landowners argue that the trial court deferred too much to Boonville's judgment and that the evidence does not support a conclusion that Boonville met its statutory burden of showing either that 60% of the land in the annexed area is "subdivided" or that the annexed area is needed and can be used by Boonville for development in the reasonably near future. Finding that the trial court applied the correct standard and that the evidence is sufficient to support the trial court's order, we affirm.

## Facts

[3] Boonville is a city of just over 6,200 people in Warrick County. Between 2000 and 2010, Boonville's population dropped by 8.6%. In recent years, multiple businesses have left Boonville, and others have avoided locating there. There are multiple vacant commercial buildings in Boonville, some of which are owned by the City or the County.

[4] On July 7, 2008, Boonville's city council passed an ordinance seeking to annex 1,165 acres (the Annexation Territory) of primarily agricultural land[1] located to the west of Boonville. The annexation would increase the geographic size of Boonville by nearly 65%. Boonville provides fire protection in the Annexation Territory, and Boonville police patrol the Annexation Territory and are often the first responders for emergency calls in that area.

[5] Boonville believes that the proposed annexation would reverse its population decline by providing opportunities for commercial and industrial growth that are not currently available. Specifically, Boonville notes that within the current city limits, there are only thirty-six undeveloped acres of land zoned for commercial, business, or industrial use. All of that acreage is located within a floodplain. In the Annexation Territory, in contrast, there are a total of 727 undeveloped acres, 227 of which are outside the floodplain and already zoned for commercial, business, and industrial use.

[6] Boonville has plans for infrastructure improvements to the Annexation Territory. It has already constructed a new sewer treatment plant in the Annexation Territory, with plans to extend sewer collection facilities to the northern, undeveloped portion of the area. There are also plans to improve upon the roadway infrastructure, including a new bypass that will cross through the undeveloped area of the Annexation Territory. In 2004, Warrick County

---

[1] Approximately 62% of the Annexation Territory is currently being farmed.

agreed to Boonville's request to create an economic development area (EDA) for the Annexation Territory.[2]

On October 3, 2008, more than two hundred landowners in the Annexation Territory (the Landowners) filed a remonstrance petition. Boonville moved to dismiss the petition based upon alleged failure to comply with relevant statutes, and the trial court granted the motion. On interlocutory appeal, this Court reversed and remanded for further consideration by the trial court. *City of Boonville v. Am. Cold Storage*, 950 N.E.2d 764 (Ind. Ct. App. 2011) (*Boonville I*).

On remand, the trial court determined that the Landowners had not met certain statutory requirements for the remonstrance petition. On appeal, this Court disagreed and reversed. *Am. Cold Storage v. City of Boonville*, 977 N.E.2d 19 (Ind. Ct. App. 2012), *trans. granted, vacated* (*Boonville II*). Our Supreme Court granted transfer, agreeing with this Court that the trial court erred, reversing the trial court's order, and remanding for further consideration. *Am. Cold Storage v. City of Boonville*, 2 N.E.3d 3 (Ind. 2014) (*Boonville III*).

After the second remand, a bench trial on the remonstrance petition took place on January 13-16, 2015. Following a motion from the Landowners, the parties submitted proposed findings and conclusions. On February 23, 2015, the trial court issued its findings of fact, conclusions of law, and judgment of

---

[2] The purpose of an EDA is to attract development, including the promotion of significant opportunities for employment and attraction of major new business enterprise. Ind. Code § 36-7-14-41.

annexation, denying the remonstrance petition and authorizing the annexation. The Landowners now appeal.

# Discussion and Decision

## I. Standard of Review

[10] In *Rogers v. Municipal City of Elkhart*, our Supreme Court described the framework of Indiana's annexation procedures as follows:

> The framework of Indiana's annexation laws has long featured three basic stages: (1) legislative adoption of an ordinance annexing certain territory and pledging to deliver certain services within a fixed period; (2) an opportunity for remonstrance by affected landowners, and (3) judicial review.

> Although the applicable statutes have undergone many changes over the years, certain general propositions of law have long applied. The statutes invest exclusive authority to annex territory in the governing body of a municipality. Annexation is a legislative function and becomes a question subject to judicial cognizance only upon review as provided by statute.

> * * *

> Because the city's authority to annex territory is defined by statute, the court's duty is to determine whether the city exceeded its authority and met the conditions imposed by the statute. Even though the burden of pleading is on the remonstrator, the burden of proof is on the municipality to demonstrate compliance with the statute. The court sits without a jury and enters judgment on the question of annexation after receiving evidence and hearing argument from both parties.

> Once the trial court has decided whether to approve an annexation ordinance, either the municipality or the remonstrators may appeal.

688 N.E.2d 1238, 1239-40 (Ind. 1997).

## A. Review of Trial Court's Decision by Court of Appeals

Where, as here, the trial court issues findings and conclusions as provided for in Indiana Trial Rule 52(A), we apply a two-tiered standard to review the trial court's order. *Oil Supply Co. v. Hires Parts Serv., Inc.,* 726 N.E.2d 246, 248 (Ind. 2000). We determine whether the evidence supports the findings and the findings support the judgment. *Id.* In deference to the trial court's proximity to the issues, "we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* We do not reweigh the evidence, but only consider the evidence favorable to the trial court's judgment. *Id.* Thus, challengers labor under a heavy burden, but one that may be overcome by showing that the trial court's findings are clearly erroneous. *Id.*

The Landowners contend that this appeal presents an issue of statutory interpretation to be reviewed de novo. We disagree. It is apparent that the true nature of this appeal is a challenge to the sufficiency of the evidence supporting the dismissal of the remonstrance petition, and we will review it accordingly.

## B. Review of Proposed Annexation by Trial Court

[13] The parties strongly disagree about the way in which a court should review a municipality's annexation determination. The trial court observed that "[s]ubstantial deference is owed to Boonville's decision to annex the Annexation Territory." Appellants' App. p. 2. More specifically, the trial court found and held as follows:

> Boonville believes that the best way to proceed is to annex the territory now, then extend sewer service and develop the area as a part of Boonville. The evidence supports the City's decision of need. *This Court will not second guess the City's decision* on how best to develop the Annexation Territory and extend services. The City has acted within its legislative discretion and has demonstrated that the area is needed and can be used for its development in the reasonably near future.

*Id.* at 17 (emphasis added). The Landowners contend that the trial court afforded Boonville too much deference at the expense of its obligation to conduct judicial review—essentially, they argue that as part of judicial review, the trial court *should* have second-guessed Boonville.

[14] The Landowners concede that courts defer to a municipality's legislative judgment in determining whether to annex territory. But they argue that "it is for the Courts to decide whether the statutory requirements are met, and 'the municipality bears the burden of showing compliance with the requirements of the annexation statute.'" Appellants' Br. p. 27 (quoting *Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002)). While that is accurate, it is well

established that annexation remonstrances are not regular lawsuits, but are special proceedings guided by well-established standards and principles. "'[A]nnexation is essentially a legislative function.' Therefore, courts play only a limited role in annexations and must afford the municipality's legislative judgment substantial deference." *In re Annexation of Certain Territory to City of Muncie*, 914 N.E.2d 796, 801 (Ind. Ct. App. 2009) (quoting *City of Fort Wayne v. Certain S.W. Annexation Area Landowners*, 764 N.E.2d 221, 224 (Ind. 2002)). In other words, "[c]ourts are not authorized to dissect the minutiae of what are essentially legislative decisions." *Fort Wayne*, 764 N.E.2d at 229.

[15] Indeed, our Supreme Court has held that the court's role is limited even where the municipality bears the burden of proof: "Although the municipality bears the burden of proof when properly challenged, we afford legislative judgment considerable deference." *Bradley*, 764 N.E.2d at 216. Therefore, a reviewing court may not examine the municipality's burden "under too powerful a microscope." *Fort Wayne*, 764 N.E.2d at 225. In sum, we find that the trial court applied a properly deferential standard when considering the proposed annexation ordinance.

## II. Annexation Requirements

### A. Statutory Framework

[16] Indiana Code section 36-4-3-13 provides, in relevant part, that if the requirements of either section 13(b) or 13(c) are met, the court "*shall* order a proposed annexation to take place" unless the landowner-remonstrators are

able to meet the criteria set forth in section 13(e).[3]  I.C. 36-4-3-13(a) (emphasis added).  Sections 13(b) and 13(c) state as follows:

> (b)  The requirements of this subsection are met if the evidence establishes the following:
>
>> (1)  That the territory sought to be annexed is contiguous to the municipality.
>>
>> (2)  One (1) of the following:
>>
>>> (A)  The resident population density of the territory sought to be annexed is at least three (3) persons per acre.
>>>
>>> (B)  Sixty percent (60%) of the territory is subdivided.
>>>
>>> (C)  The territory is zoned for commercial, business, or industrial uses.
>
> (c)  The requirements of this subsection are met if the evidence establishes one (1) of the following:
>
>> (1)  That the territory sought to be annexed is:
>>
>>> (A)  contiguous to the municipality as required by section 1.5 of this chapter, except that at least

---

[3] If the trial court finds that the municipality has met its statutory burden, the annexation must occur unless the landowner-remonstrators are able to meet the criteria set forth in section 13(e).  In this case, the trial court found that the Landowners did not meet the section 13(e) criteria, and they do not appeal that determination.

one-fourth (¼), instead of one-eighth (⅛), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality; and

(B)     needed and can be used by the municipality for its development in the reasonably near future.

(2)     This subdivision applies only to an annexation for which an annexation ordinance is adopted after December 31, 2016. That the territory sought to be annexed involves an economic development project and the requirements of section 11.4 of this chapter are met.

In this appeal, only two portions of sections 13(b) and (c) are at issue. Specifically, the Landowners contend that the trial court erred by concluding that Boonville proved that (1) sixty percent of the Annexation Territory is subdivided pursuant to section 13(b)(2)(B); and (2) the Annexation territory is needed and can be used by Boonville for its development in the reasonably near future pursuant to section 13(c)(1)(B).[4]

---

[4] The trial court primarily rested its decision on section 13(c), but also found that even if Boonville had not met the requirements in that section, it had also met the requirements of section 13(b). The Landowners appeal under both sections 13(b) and 13(c).

# B. Section 13(b): Sixty Percent Subdivided

[17]   The parties' primary disagreement with respect to section 13(b) surrounds the definition of the term "subdivided." The Landowners contend that this term, which is not defined in the statute, must be considered in light of the overall purpose of the statute, which is "to permit annexation of adjacent urban territory." *Rogers v. Elkhart*, 688 N.E.2d 1238, 1242 (Ind. 1997). They insist that the Annexation Territory is "far from urban," noting that "[t]he unzoned land, and the land zoned agricultural, recreation and conservancy, or floodplain, make up nearly half of the [A]nnexation [T]erritory." Appellants' Br. p. 18.

[18]   At trial, Boonville's expert testified that in his opinion, more than 60% of the Annexation Territory is subdivided. He reasoned that, although many of the parcels were divided long ago, before the county's subdivision control ordinance was enacted, they "would be required to go through the subdivision control ordinance if they were done today because of where they're zoned." Appellants' App. p. 83. The Landowners argue that this analysis is faulty because it "erroneously applied the Warrick County subdivision control ordinance to any land that had ever been divided, regardless of when, and erroneously overlooked the fact that several of the parcels that he asserted were 'subdivided' were in fact *aggregated*." Appellants' Br. p. 19 (emphasis original).

[19]   The Landowners observe that virtually all land in the United States has been divided at some point. Without evidence regarding the dates on which the

parcels were divided, "Boonville's expert's definition of 'subdivision' might apply to land divided more than a century ago, when one farmer sold some land to another." *Id.* The Landowners argue that this approach is inconsistent with the statutory purpose of urbanization.

[20] We cannot agree with the Landowners' overly narrow definition of the term "subdivided." Indeed, our Supreme Court has rejected precisely such a narrow definition. In rejecting the remonstrators' assertion that to meet section 13(b)(2)(B), "the City must demonstrate that 60% of the land became subdivided through the local subdivision approval process," our Supreme Court reasoned as follows:

> This assertion asks courts to add too much to statutes that consign decision-making power to legislators, local and state. The theme of Indiana annexation law has long been that adjoining territory of an urbanizing character was subject to annexation. As counsel for the Remonstrators observe, "Generally speaking, land next to a city has already begun taking on attributes of urbanization or it reflects the immediate likelihood of such urbanization."

*Rogers*, 688 N.E.2d at 1241. The Court then outlined the evolution of the urbanization question, which historically "permitted annexation of land 'whether platted or not'" and annexations for areas that are "an economic and social part of the annexing city." *Id.* The *Rogers* Court explained that "[i]nasmuch as the present statute contains no definition of 'subdivided,' the trial court might well have looked in several directions if it perceived the need for greater definition." *Id.* at 1241-42. Our Supreme Court emphasized that

"the definition a municipality uses for these purposes is one yardstick a court may employ, though there may be others not suggested to us by the parties to the case," and the remonstrators' limited definition "demands far more than the straightforward language of the code provides." *Id.* at 1242.

[21] In light of *Rogers*, we find that the trial court properly refused to limit the definition of "subdivided" to parcels of land that have actually gone through the process set forth by the county subdivision control ordinance. Boonville's expert testified that, based on the definition of "subdivision" in that ordinance, 61.5% of the Annexation Territory would have been required to follow the procedures set forth by that ordinance and would constitute a subdivision today, had the ordinance been in place when the parcels were divided.

[22] As for whether the Annexation Territory has begun taking on the attributes of urbanization, the trial court heard all of the evidence and found that, while parts of the Annexation Territory are undeveloped, "it is also apparent that large portions of the Annexation Territory are already developed and have become urbanized in the general sense." Appellants' App. p. 8. The trial court relied on the development along the highway access of State Road 62, where there are numerous restaurants, auto dealerships, office buildings, two industrial parks, and several residential neighborhoods. This evidence suffices to support the trial court's finding that the Annexation Territory has already begun taking on attributes of urbanization. We find that the trial court applied a proper definition of the term "subdivided" and did not err by concluding that

over 60% of the Annexation Territory is subdivided for the purpose of Section 13(b).

## C. Section 13(c): Needed and Can Be Used

Given that we have found that Boonville met the conditions set forth in section 13(b), we need not also consider section 13(c). But because these types of issues recur frequently, we will consider the application of 13(c) to this case.

To meet its burden under the relevant portion of section 13(c), Boonville was required to show that the Annexation Territory was both "needed" and "can be used" for Boonville's development "in the reasonably near future."

## 1. Recent Cases

This Court has issued two opinions recently relating to section 13(c). In *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, a group of remonstrators challenged Fortville's attempted annexation of land adjacent to the town. No. 30A01-1410-MI-442 (Ind. Ct. App. July 2, 2015), *trans. pending*. In *Fortville*, the trial court found that the town had failed to meet its burden that the annexed area was needed and could be used for development in the reasonably near future. This Court noted that "the trial court appears to have been seeking evidence that Fortville had plans to implement brick and mortar development in the near future." *Id.* at *3. We found that this standard was overly limited and held that, to comply with section 13(c), "a municipality need not demonstrate immediate plans to build on the annexed land . . . ." *Id.* at *4. This Court reasoned as follows:

To allow the trial court's order to stand would be to hold that a city—if it does not have impending plans to build on land that it seeks to annex—must sit and watch the land be used and developed in ways that might harm or impede its future plans for urban management of the land, until the "long-term inevitability" of annexation takes place. This result would be bad policy and likely harm both the area to be annexed and the municipality that seeks to annex it. Thus, we determine that the trial court should not have limited its analysis to evidence of physical construction or development in determining whether Fortville fulfilled the requirements of Indiana Code section 36–4–3–13(c)(2).

Therefore, we hold that the trial court applied the wrong evidentiary standard as a matter of law and find that, in determining whether a municipality fulfills the requirements of Indiana Code section 36–4–3–13(c)(2), *a trial court may, and should, consider non-physical brick and mortar development uses, such as those—using annexed territory for "transportation linkages with other developing areas, to control adjacent development on its borders, and to prevent conflicting land uses"*—noted by our Supreme Court in *Hobart.* 631 N.E.2d at 913 n.6. We reverse and remand with instructions that the trial court apply the correct standard and reconsider its judgment.

*Id.* at *4-5 (citing *Chidester v. City of Hobart*, 631 N.E.2d 908, 913 n.6 (Ind. 1994)) (emphasis added).

[26] Not long after *Fortville* was handed down, this Court considered a similar case in *Town of Whitestown v. Rural Perry Township Landowners*, No. 29A05-1409-MI-437 (Ind. Ct. App. July 29, 2015), *not yet certified*. In *Whitestown*, the town enacted an annexation ordinance that sought to annex acreage located in an unincorporated portion of Perry Township. A number of landowner-

remonstrators filed a remonstrance petition, and the trial court found in their favor. Among other things, the trial court found that Whitestown had failed to meet its burden under section 13(c). This Court noted that "there was ample testimony concerning the town's rapid growth and the efforts Whitestown put into encouraging, predicting, and planning that growth—and how the Annexation Area could be used for those ends." *Id.* at *9.

[27] Although there was no evidence of ongoing, confirmed projects in the annexation area, this Court emphasized that "the test prescribed under [section 13(c)] is not whether the annexing municipality can make do without the territory it seeks to annex." *Id.* Citing to *Fortville*, the *Whitestown* Court held that the trial court erred by finding that Whitestown had failed to carry its burden of proof. The Court also sought to "remind trial courts of . . . the deferential standard accorded to annexing municipalities[.]" *Id.* at *10. In the end, the *Whitestown* Court reversed the trial court and instructed that judgment be entered in favor of Whitestown on the remonstrators' petition.

## 2. Boonville Annexation

[28] As for the case before us, we agree with Boonville that what a municipality needs and can use "is first and foremost a legislative determination." Appellees' Br. p. 33. A court should not substitute its judgment for what a municipality determines is needed to accomplish its purposes. *State v. Collom*, 727 N.E.2d 737, 741 (Ind. Ct. App. 1999) (holding that questions of government necessity and expediency are understood to be exclusively for the

legislature). Additionally, we observe that necessity "is not limited to the 'absolute or indispensable needs of [the municipality], but is considered to be that which is reasonably proper and useful for the purpose sought." *Collom*, 720 N.E.2d at 741. Boonville was not required to put forth specific development projects planned for the Annexation Territory. Instead, it merely needed to show that the land was needed and can be used, rather than "a concrete 'will' be used." Appellees' Br. p. 36.

[29] The evidence supporting Boonville's assertion that the Annexation Territory is needed and can be used is as follows:

- Boonville has run out of room and needs the Annexation Territory to be able to grow and attract new business and industry.
- The city currently has zero acres outside of the floodplain that are available for commercial, business, or industrial development. The Annexation Territory would add 227 such acres to Boonville.
- Boonville has plans for bringing new development to the Annexation Territory, including sewer services and a major transportation linkage.
- Boonville has already constructed a new Sewer Treatment plant in the Annexation Territory.
- Boonville provides fire protection and police patrols to the Annexation Territory.

Being mindful of our deferential standard of review, we find that this evidence supports the trial court's conclusion that Boonville met its burden under section 13(c). While there is no evidence of ongoing, confirmed projects in the Annexation Territory, Boonville is not required to make such a showing. It has offered evidence establishing a need for the Annexation Territory, as well as its outlined hopes for development, including business, transportation, and sewer

services, in that area. This evidence is sufficient to show that the Annexation Territory is needed and can be used by Boonville in the reasonably near future.

[30] The Landowners contend that the proposed annexation is a mere tax grab, pointing to a media interview in which Boonville's mayor allegedly stated "that she was not going to give anything to the annexed area, and all she wanted was their money." Appellants' App. p. 97. This media report was not, itself, put into evidence at the trial. Instead, one of the remonstrators claimed that he had seen the television news report nearly seven years before the trial. At trial, the mayor testified that the reason for the annexation was because the city needed it for development. Furthermore, a government fiscal expert testified that the City may actually see *less* tax revenue from the annexation than the estimated cost of providing services to the area. In other words, the expert testified that the annexation "doesn't make sense" if it is "some kind of a money grab." Tr. p. 367.

[31] The testimony of the mayor and the government fiscal expert was sufficient evidence to support the trial court's conclusion that the annexation is not a mere tax grab. The Landowners' arguments to the contrary amount to a request that we assess witness credibility and reweigh evidence, which we decline to do.

[32] In sum, we find as follows: (1) the trial court applied a properly deferential standard of review to the annexation ordinance; (2) the trial court did not err by concluding that Boonville established that over 60% of the Annexation

Territory is subdivided; and (3) the trial court did not err by concluding that Boonville established that the Annexation Territory is needed and can be used for development in the reasonably near future.

[33] The judgment of the trial court is affirmed.

Brown, J., concurs, and Riley, J., concurs in result.